### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## WESTERN DIVISION.

## JACKSON, APRIL TERM, 1915.

---

W. B. BATTLE *et al. v.* LOUIS E. CLAIBORNE *et al.*

(*Jackson.* April Term, 1915.)

1. **REFORMATION OF INSTRUMENTS.** Requisite evidence.
A court of equity will not exercise its powers of reforming a
written instrument except upon clear, certain, and satisfactory
evidence placing the propriety of reformation beyond reasonable
controversy. (*Post, pp.* 291-302.)

Case cited and approved: Johnson v. Johnson, 67 Tenn., 261.

Cases cited and distinguished: Talley v. Courtney, 48 Tenn.,
715; Perry v. Pearson & Anderson, 20 Tenn., 431-439.

2. **MORTGAGES.** Deeds. Evidence. Sufficiency.
Where complainants, claiming through their father, sought the
cancellation of a deed from him to C. and of a deed from C.
to grantor's wife separately, as a cloud upon their title on the

Battle et al. v. Claiborne.

ground that the first deed was a mortgage which had been shown in the recitals of two subsequent deeds to the land fully paid after the execution of the deed to the wife by C. as executed and delivered by C. to the grantor, evidence *held* insufficent to support a decree for cancellation. (*Post, pp.* 291-302.)

3. **ESTOPPEL.   Deeds.   Formal sufficiency.   Consideration.
Recital.   When binding.**
Where a deed is sufficient in form to pass title to the grantee, and purports to have been made for a valuable consideration, the grantor and his heirs at law are estopped thereby to show that a valuable consideration was not paid by the grantee, where there is no fraud on grantee's part, and the rights of innocent purchasers or creditors of the grantor have not intervened. (*Post, pp.* 302-304.)

Case cited and approved: Woods v. Bonner, 89 Tenn., 411.

Cases cited and distinguished: Henderson v. Overton, 10 Tenn., 394; Wilson v. Bass., 6 Tenn., 110; Ruffin v. Johnson, 52 Tenn., 604; Martin v. Maine Central R. Co., 83 Me., 100; Demorest v. Hopper, 22 N. J. Law, 599; Condit v. Bigalow, 64 N. J. Eq., 504; King v. Coleman, 98 Tenn., 564.

4. **DEEDS.   Formal sufficiency.   Recital of consideration.   Want
of consideration.   Title.**
Even though such a deed is admittedly without consideration, it passes title to the grantee. (*Post, pp.* 302-304.)

5. **HUSBAND AND WIFE.   Conveyance to wife.   Formal sufficiency.   Recital of consideration.   Title.**
Where one conveyed land in fee to C., who in turn conveyed it to grantor's wife, by a deed containing apt words for the creation of a separate estate, such estate was vested in the wife unincumbered by any rights of the husband, though, as a matter of fact, there was no payment of the valuable consideration recited in each deed. (*Post, pp.* 304-306.)

Cases cited and distinguished: Barnum v. Le Master, 110 Tenn., 640; Ferguson v. Booth, 128 Tenn., 259.

6. **HUSBAND AND WIFE.** *Deed to wife. Delivery to husband. Recording by husband. Knowledge of wife. Delivery and acceptance.*

The execution and .delivery by C. to the grantor of the deed to the wife and its delivery by the grantor to the register for record with knowledge that it was afterwards recorded and an assent to and claim under the deed by the wife with knowledge that it had been so made and recorded, was sufficient evidence to warrant the conclusion that there was a delivery to and acceptance by the wife. (*Post, pp.* 306, 307.)

Cases cited and approved: McEwen v. Bamberger, 71 Tenn., 576; McEwen v. Troost, 33 Tenn., 186; Nichol v. Davidson County, 3 Tenn. Ch., 547; Nailer v. Young, 75 Tenn., 735; Mason & Holman v. Holman, 78 Tenn., 315; Davis v. Cross, 82 Tenn., 641; Davis' Adm'r v. Garrett, 91 Tenn., 148; Land Co. v. Hilton, 121 Tenn., 308; Scott v. Bank, 123 Tenn., 275; Swiney v. Swiney, 82 Tenn., 316.

7. **ESTOPPEL.** *Failure to assert title. Acts in derogation. Estoppel.*

In an action by heirs of a grantor who conveyed land in fee to C., who in turn conveyed it to grantor's wife separately, seeking cancellation of the deeds as a cloud on their title, on the ground that such deed by the grantor to C. was a mortgage which had been subsequently paid, as recited in a deed from C. to the grantor, made subsequent to the conveyance by C. to the wife, the facts that the wife did not claim the land, but spoke of it as the husband's, that she had urged him to will it to her with power of final disposition, and, failing this, induced him to devise her a life estate therein, with remainder over to his kin, did not estop her or those claiming under her from asserting title, where she was justified under the whole transaction and representations made to her in believing that title was in the husband. (*Post, pp.* 307-312.)

Cases cited and approved: Barnum v. Le Master, 110 Tenn., 640; Ferguson v. Booth, 128 Tenn., 259; Parkey v. Ramsey, 111 Tenn., 302.

Battle et al. v. Claiborne.

Case cited and distinguished:   Morris v. Moore & Hancock, 30 Tenn., 433.

Code cited and construed:   Sec. 4246 (S.).

8. **HUSBAND AND WIFE.** Separate estate. Conveyance to husband.

Under Shannon's Code, sec. 4246, empowering married women to dispose of their separate estates, a married woman can pass title to her husband.   (*Post, pp.* 307-312.)

9. **WILLS.** Provision for wife. Election. Failure. Estoppel.

Where a widow failed within a year to dissent from her husband's will as provided for by Shannon's Code, sec. 4146, the provision of the will for her being a life estate in land owned by her through a conveyance in fee from the husband to C. and a conveyance by C. to her, she having been led by her husband to believe, as did he, that the title was subsequently revested in him by certain deeds of the same property made by C. to him, reciting that the original deed to C. was a mortgage which had been fully paid, the widow's next of kin and heirs at law were not concluded by the failure on the widow's part to so dissent and her acceptance of the provision of the will in derogation of her title, since the statute, being designed to secure to the wife a proper provision from her husband's property by an election made within a time limited in the interests of the speedy administration of estates, does not apply under such facts.   (*Post, pp.* 312-321.)

Cases cited and approved:   Reid v. Campbell, 19 Tenn., 378; McDaniel v. Douglas, 25 Tenn., 221; McClung v. Sneed, 40 Tenn., 218; Williams v. Gray, 41 Tenn., 105; Waddle, Adm'r v. Terry, 44 Tenn., 51; Waterbury v. Netherland, 53 Tenn., 512; Demoss v. Demoss, 47 Tenn., 256; Parkey v. Ramsey, 111 Tenn., 302; Rowlett v. Rowlett, 116 Tenn., 458; Smart & Wife v. Waterhouse, et al., 18 Tenn., 95; Owens v. Andrews, 17 N. M., 597; Bible v. Marshall, 103 Tenn., 324.

Case cited and distinguished:   Walker v. Bobbitt, 114 Tenn., 700.

Code cited and construed:   Sec. 4146 (S.).

133 Tenn. 19

10. WILLS. Disposition of wife's property by husband's will. Acceptance by wife. Election.

Nor did the acceptance by the widow of the provision of the will in derogation of her title constitute an election by her whereby she and her representatives were estopped to assert title to the land under the doctrine that, where one by will undertakes to dispose of the property of another by giving to the owner thereof other benefits in lieu, the acceptance of the provision is an election by the beneficiary estopping him to assert title, since the will treated the property as belonging to the husband absolutely, and the wife's acceptance of its provision in the belief that title was in the husband could not be an election. (*Post, pp.* 312-321.)

11. ESTOPPEL. Predecessors in title. Warranty. When not binding.

Where a grantor conveyed property to C. in fee, and C. conveyed it to the grantor's wife, the wife's representatives were not estopped to assert the title thus vested in her because of any estoppel which might have arisen against C. by reason of the special warranty in a subsequent deed to the property given by C. to the grantor that "the said C. hereby warrants the title to said land against the lawful claims of all persons claiming by, through, or under him, . . . " or by reason of a recital in such deed that the original deed from grantor to C. was a mortgage which has been fully paid where the special warranty deed was procured by the husband in an effort to becloud the title vested in the wife by the original transaction, which was also had through his procurement. (*Post, p.* 321.)

Cases cited and approved: Ferguson v. Booth, 128 Tenn., 259; Barnum v. Le Master, 110 Tenn., 640.

12. HUSBAND AND WIFE. Joint possession with wife. Effect.

Where a husband conveyed land in fee to C., and C. conveyed to the grantor's wife, thereby vesting title in her, a claim of title by the husband to the land under subsequent deeds from C. to him could not ripen into title by adverse possession as

against the wife, where the land was timber land, and such possession as was had was jointly with the wife, and not adverse as to either. (*Post, pp.* 321, 322.)

FROM SHELBY.

Appeal from the Chancery Court of Shelby County. —Wm. H. Fitz-Hugh, Special Chancellor.

A. H. Murry and Byars & Capell, for appellants.

Jno. Brown and Grover N. McCormick, for appellees.

R. M. Barton, Guardian Ad Litem for infant defendants.

Mr. Justice Buchanan delivered the opinion of the Court.

Col. Frederick Battle and his wife, Martha A. R. Battle, each died testate, the wife surviving the husband. They were childless. For the most part of their married life they resided on what was known as the "old Battle homestead." The house in which they lived was located on land the title to which was in Mrs. Battle at the time of her death, and it had been for many years prior to that event. The land so owned by her when she died was a tract containing two hundred and fifty-five acres. Her holding originally had been larger, but it had been reduced by sales. Lying to the north of, and adjoining the two hundred and fifty-five-acre tract which she owned, was a tract of land containing two hundred and thirty-nine acres. The ownership of this two hundred and thirty-nine-acre

tract is the storm center of this litigation. This land, on the one hand, is claimed by the complainants, who. are, for the most part, kindred of Col. Battle. They claim the land as remaindermen under his last will, after the falling in of what they insist was a life estate in Mrs. Battle, created by the will of Col. Battle. On the other hand, this land is claimed by the defendants as the next of kin and heirs at law of Mrs. Battle. These defendants are John A. Claiborne, a surviving brother of Mrs. Battle, and the descendants of a deceased sister of Mrs. Battle. No mention of this tract of land was made by Mrs. Battle in her last will, though she did by that instrument devise the two hundred and fifty-five-acre tract, which it is conceded she owned.

The will of Col. Battle was dated February 15, 1905, and its first item is:

"I give and bequeath to my beloved wife, Martha Battle, during her life all of my land situated in the first district in Shelby county, consisting of two hundred and thirty-nine acres, being an undivided portion of the north end of the tract I live on, and is explained in the deed at her death this land to be sold, or she can sell this land at any time during her life, if she thinks best, and at her death the money is given to the following parties."

Then follow ten separate bequests of money to as many beneficiaries, who are the complainants in this suit. Then the will continues:

"When this land is sold, and it brings more than the above amounts, it is to be prorated to the above

persons, according to the amounts given them. I give
and bequeath to my beloved wife, Martha Battle, all
of my personal property. I do nominate and appoint
my wife, Martha Battle, to be the executor of this my
last will and testament without bond. My executor is
to pay all of my just debts before any of these or any
bequests are given.

"FRED BATTLE."

There were two witnesses to the execution of the
will, and to it there was added a codicil of date De-
cember 11, 1906, making a change in respect of one of
the money bequests. This will and codicil was pre-
sented for probate by Mrs. Battle on March 27, 1907.
She qualified as executrix thereunder and made her
final settlement as executrix.

The will of Mrs. Battle was dated November 2, 1912,
and was offered for probate June 6, 1912, and duly pro-
bated by the executor in it named, who was her nephew,
Louis E. Claiborne.

After the death of Col. Battle, Mrs. Battle sold cer-
tain standing timber on the land in suit. The timber
was cut and removed from the land, and Mrs. Battle
never accounted to the complainants for the proceeds.
She died leaving an insufficient personal estate to pay
her debts. After her death this suit was instituted,
its purpose being to secure a decree against her estate
for the value of the timber which she had cut and
sold. Its further purpose was to have a decree sub-
jecting the two hundred and fifty-five acre tract to sale

in order to satisfy such decree as complainants might recover.

By an amended and supplemental bill complainants sought a decree declaring two certain deeds to be clouds on their title to the tract in suit. One of these deeds was made by Col. Battle to John A. Claiborne, and the other was made by John A. Claiborne to Mrs. Battle. These deeds will be considered more at length hereafter.

In opposition to the purposes of the complainants as above declared, the defendants, by their pleadings, insist: First, that at the death of her husband, and thereafter until her own death, by virtue of the two deeds already mentioned, Mrs. Battle was owner in fee of the land in controversy, from which the timber was cut, and that upon her death the title to the two hundred and thirty-nine-acre tract was cast upon the defendants by descent; second, that under the will of Fred Battle absolute power was vested in Mrs. Battle to sell, not only the timber, but the lands, and therefore, if wrong in their first position, she acquired a fee in the land under her husband's will; third, if wrong in the first and second contentions, then upon a proper construction of the will, complainants could only recover such part of the proceeds of the timber sold as had not been consumed by Mrs. Battle at the time of her death; fourth, that under the prayer of the cross-bill filed by defendants they are entitled to a decree declaring them to be the owners of the two hundred and-

thirty-nine-acre tract in suit, and to a decree dismissing complainant's bills.

The chancellor granted a decree in favor of complainants against the estate for $1,578, and costs. The cross-bills of defendants were dismissed, and the decree awarded satisfaction and payment of the above amount out of a fund then in court which had been produced by an agreed sale of the two hundred and fifty-five-acre tract owned by Mrs. Battle at the time of her death. The sale of said tract had been consummated during the progress of the cause, by consent of all parties thereto. The decree also awarded relief as to the reformation and cancellation sought by complainants. From this decree, defendants appealed.

It is conceded that Col. Battle was the owner of the land in suit on January 20, 1868, on which date he executed and delivered to John A. Claiborne, Mrs. Battle's brother, a warranty deed purporting to convey the full fee in the land for a recited cash consideration of $1,200. This deed was acknowledged and filed for registration April 7, 1868. From this date for about nine years, so far as the record shows, the title to this tract of land stood vested in John A. Claiborne.

On December 22, 1870, Claiborne executed a deed purporting to convey said tract of land to his sister, Martha A. R. Battle, for a recited cash consideration of $1,400. This deed purported to vest in her the full fee as a separate estate in the land in suit. The acknowledgment of this deed is of date August 28, 1872. The deed was not filed for registration until April 5,

1877. For about thirteen years and six months after the date of the registration of this deed the record title to this tract was allowed to stand apparently vested as a separate estate in Martha A. R. Battle, under the deed from Claiborne to her. This period of time, added to the nine years during which the record title had been allowed to rest in Claiborne, makes a total period of about twenty-two years during which the record showed no claim or color of title in Col. Battle to the land in suit. The thirteen-year period above mentioned came to and end on January 10, 1891, when there was filed for registration a quitclaim deed from Claiborne to Fred Battle purporting to convey all of Claiborne's right, title, and interest in the land in suit. This instrument is dated January 27, 1876. There was no acknowledgment until January 6, 1891. It recites, in its first part, that it is made in consideration of five dollars cash in hand paid, but later, in its body, contains this recital:

"I quitclaim all of said land for and in consideration of the $1,700 paid me in hand."

This deed makes no reference to the original deed from Battle to Claiborne, nor to the deed from Claiborne to Mrs. Battle. It contains this warranty clause:

"I do hereby warrant the title herein conveyed unto the said Fred Battle, against the lawful claims of all persons whomsoever claiming the same by, through, or under me."

On the same day the above quitclaim deed was filed for registration, to wit, January 10, 1891, another deed

was filed for registration, in which the grantors were Claiborne and his wife. It was dated January 5, 1891, and acknowledged January 6, 1891. It·purports to convey to Fred Battle all of the right, title, and interest of the grantors of every kind in and to the tract in suit, and it contains a warranty by Claiborne only, in these words:

"And the said John A. Claiborne hereby warrants the title to said land against the lawful claims of all persons claiming by, through, or under him, but no further."

It also contains a recital, the substance of which is that the deed from Fred Battle to Claiborne, dated January 20, 1868, was only a mortgage, and intended to secure an indebtedness "then due" by Fred Battle to Claiborne, and that the same had been paid prior to the execution of the quitclaim deed of date January 27, 1876. It also recites that the failure to file for registration the quitclaim deed last named at an earlier date was due to the loss of that instrument.

Beyond dispute, Col. Fred Battle was the moving spirit in the execution of each of the two deeds and each of the quitclaim deeds above mentioned. Claiborne's part in each and all of the above conveyances was merely passive. The relations betwene these two men were very close and friendly. Battle was the older man. Claiborne had been partly reared in the Battle home, and had much affection for Battle and his wife, who was Claiborne's sister. Speaking of them, Claiborne testifies:

"They were just as good to me as my own mother and father, and whatever Mr. Battle asked me to do, sign papers and such, I went on and signed them without any question at all. I had that much confidence in him that I never questioned him at all."

Claiborne testifies that he became twenty-one years of age on December 17, 1865. Col. Battle was his guardian, and, as such, was indebted to him when Claiborne became of age. In December, 1866, Claiborne married, and in the first part of the year 1867 Battle discharged his guardianship debt by conveying to Claiborne a tract of land (not that in suit) containing about one hundred and eighty-five acres. This was a full settlement between them as guardian and ward, and there was no debt due by Battle to Claiborne on January 20, 1868, when Battle conveyed to him the land in suit. Claiborne paid Battle nothing for the land at the time of that deed. He merely accepted the deed at the request of Battle, and he testified, in substance, that he understood Battle's purpose in conveying the land to him was to place it beyond the reach of Battle's creditors. The deed from himself to Mrs. Battle, Claiborne executed at the request of Col. Fred Battle. Mrs. Battle paid Claiborne nothing as the consideration for that deed. When that deed was executed, it passed from the hands of Claiborne into the hands of Col. Battle, and it was he who caused it to be registered. Each of the quitclaim deeds above mentioned was executed by Claiborne at Col. Fred Battle's request. The execution of these quitclaim deeds is strong

Battle et al. v. Claiborne.

corroboration of the truth of Claiborne's statement that he signed whatever papers Col. Battle asked him to sign.

The manifest purpose of each of the quitclaim deeds was to becloud the title of Claiborne's sister to the land in suit. Undoubtedly for her he had great affection, and it is quite improbable that he would have executed these quitclaim deeds had he not been dominated, as he testifies he was, by his confidence in Col. Battle. Claiborne testifies that he never discussed these conveyances with his sister. He is, to be sure, interested in the result of the present controversy, but notwithstanding his evidence appears to us as being truthful. No witness disputes what he says about these transactions. It is not probable that Col. Battle would have communicated his purpose in the execution of the original warranty deed to any other person except Claiborne. There is no assault made on the reputation of Claiborne for truth in this record. The deed from Battle to Claiborne, and from Claiborne to Mrs. Battle, and the undisputed evidence that each of them was executed at the instance of Col. Battle, and that under these deeds, for a period of twenty-two years, Col. Battle caused the public record to show that the legal title to the land was not in him, are weighty corroboration of the evidence of Claiborne to the effect that the original warranty deed was not intended to operate as a mortgage, and clearly refute the recitals of the quitclaim deeds to that effect.: If the recitals of the last quitclaim deed, to the effect that,

the deed by Battle to Claiborne was only a mortgage
to secure a debt then due by Battle to Claiborne, and
that this debt was paid before the first quitclaim deed
was executed, be true, why was the first quitclaim deed
withheld from registration? The answer sought to be
made to this question by the second quitclaim deed is
that the first was not properly acknowledged for reg-
istration; also that it was lost. But this answer is not
satisfactory. Granting that it was not properly ac-
knowledged, and granting that it was lost, the ques-
tion arises: What was in the way of securing another
quitclaim deed and placing that of record? No answer
is made to this question.

The first quitclaim deed was executed in 1876, but
not acknowledged and placed of record until 1891. If
Col. Battle had desired the record title to the tract
in suit to appear to be in him, undoubtedly he would
have caused the first quitclaim deed to be acknowl-
edged and filed for registration in 1876, thus giving it
priority of registration over the deed from Claiborne
to Mrs. Battle, which, though executed in 1870, was not
filed for registration until April 5, 1877. Again, if
Col. Battle had desired the record title to the tract
in suit to appear in him, why was the deed to Mrs.
Battle ever filed for registration? It is clear that she
did not cause it to be registered; Claiborne was not in-
strumental in its registration; it is beyond dispute
that its registration was caused by Col. Fred Battle,
and the only conclusion possible is that it was his pur-
pose that the record title to the tract in suit should

exist in his wife, not in him. The evidence wholly preponderates against complainants' theory that the deed from Battle to Claiborne was intended to be a mortgage.

The jurisdiction of courts of equity to reform written instruments in certain classes of cases is well established. 3 Pom. Eq. Jur., sec. 1376. But this jurisdiction can be successfully invoked only under appropriate pleadings and proper proofs. In one of our cases it is said that the proof must be "clear, certain, and satisfactory." *Johnson* v. *Johnson,* 67 Tenn. (8 Baxt.), 261. In another case it is said, quoting from Judge Story:

"If the proofs are doubtful and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief, upon the ground that the written paper ought to be treated as a full and correct expression of the intent, until the contrary is established beyond reasonable controversy." *Talley* v. *Courtney,* 48 Tenn. (1 Heisk.), 715.

In another case it is said:

"The evidence must be clear and strong, proving it to the entire satisfaction of the court." *Perry* v. *Pearson & Anderson,* 20 Tenn. (1 Humph.), 431-439.

Even if the rule was that the preponderance of the evidence would suffice, the decree of the chancellor granting the relief of cancellation and reformation prayed for by complainants could not stand; for, as we have seen, the preponderance of the evidence is against the theory and averments of the complainants'

pleadings. This conclusion brings us to a considera-
tion of the legal effect of the deed from Fred Battle
to Claiborne, and the deed from Claiborne to Mrs.
Battle.

Taking up the first of these deeds, it is to be observed
that it is sufficient in form to pass title to Claiborne.
Next it purports to have been made for a valuable con-
sideration, and in the absence of fraud in the trans-
action by Claiborne, or the rights of innocent pur-
chasers, or the rights of creditors of Battle, he was, and
the devisees under his will or his heirs at law are,
estopped by his deed to aver and show to the contrary
of its recital, that a valuable consideration was paid
by Claiborne for the land. It results that this deed, as
between Battle and those claiming under him, the com-
plainants in the present case, passed title into Clai-
borne. In support of the conclusion just stated, see
the following authorities:

"A fact admitted by recital, or directly in a cove-
nant or deed, concludes all the parties to it, and cannot
be averred against." *Henderson* v. *Overton,* 10 Tenn.
(2 Yerg.), 394-397 (24 Am. Dec., 492). "The parties
by these deeds have agreed that the distance from the
ash to the river is two hundred poles; and shall they
not be concluded by it? Whatever is agreed by the
parties in pleading or conveyances cannot be contra-
dicted by either of them." *Wilson* v. *Bass,* 6 Tenn. (5
Hayw.), 110, 111. "It is a familiar doctrine of the
law, founded in sound policy and sound morals, that
where one party, by his deliberate act or solemn deed,

has asserted a fact upon which another in privity with him has been induced to act upon the assumption of good faith in said act or deed, the former shall not be heard to gainsay or deny said act or deed." *Ruffin* v. *Johnson,* 52 Tenn. (5 Heisk.), 604-608. "The name 'estoppel' was given," says Lord Coke, "because a man's own act stoppeth up his mouth to allege or plead the truth." *Martin* v. *Maine Central R. Co.,* 83 Me., 100, 21 Atl., 740. "An estoppel is where a man is concluded and forbidden by law to speak against his own act or deed; yea, even though it is to say the truth." *Demarest* v. *Hopper,* 22 N. J. Law (2 Zab.), 599. "Estoppel by warranty is based on the fundamental principles of giving effect to the manifest intention of the grantor, appearing on the deed, as to the lands or estate to be conveyed, and of preventing the grantor's derogating from or destroying his own grant by any subsequent act." *Condit* v. *Bigalow,* 64 N. J. Eq., 504, 54 Atl., 160.

But suppose complainants were untrammeled by the doctrine of estoppel and free to show and rely on the fact that no consideration passed from Claiborne to Battle; would the fact, if shown, avoid the deed, or defeat the passage of the title into Claiborne? Their pleadings hardly suffice for such a result, but, waiving this, and assuming sufficient pleadings by them, how would they stand? We think they would be in no better case. An excerpt from the opinion in one of our cases is in point here:

"If the assignment made by Finney in 1872 had the effect of a deed, as demurrants insist it did, it passed the title to the land from him to Phillips, whether the assignment was made 'for value received,' as recited therein, or 'without consideration,' as alleged in the bill; and this is not rendered any the less so by the further allegations that Phillips never asserted any rights under the assignment, and that the possession of the land remained unchanged as between grantor and grantee. The title passes as contemplated by the terms of the deed, whether the conveyance be with or without consideration, and whether it be made in good faith or for a fraudulent purpose; and the title is not revested in the grantor by the mere nonclaim of the grantee and the nonexchange of the possession." *King* v. *Coleman,* 98 Tenn. (14 Pick.), 564, 565, 40 S. W., 1082, 1083.

See *Woods* v. *Bonner,* 89 Tenn. (5 Pick.), 411, 18 S. W., 67.

The next question is whether that part of the chancellor's decree can stand whereby the deed from Claiborne to Mrs. Battle was canceled, as a cloud on complainants' title. One view of this matter, which might be entertained under the facts already stated, is that the case falls within the principles announced in *Barnum* v. *Le Master,* 110 Tenn. (2 Cates), 640, 75 S. W., 1045, 69 L. R. A., 353, and *Ferguson* v. *Booth,* 128 Tenn. (1 Thomp.), 259, 160 S. W., 67, Ann. Cas., 1915C, 1079. In *Barnum* v. *Le Master* a deed was made by the husband to the wife reciting a consideration of love

and affection, without any words in the deed indicating a purpose to create a separate estate; yet it was held that a separate estate in the land conveyed by that deed was created in the wife. In *Ferguson* v. *Booth,* supra, it was held that the *rationale* of *Barnum* v. *Le Master* was that:

"The mere fact of the conveyance from husband to wife conclusively ascertains the husband's intention to be that the wife is to hold the property as her separate estate," and that the reason applied "with equal force where the husband purchases real estate and pays the consideration price and directs that the conveyance to be made to his wife without . . . reservation of his . . . rights as husband," and it was said "such an act excludes the thought that he intended the purchase for his own benefit."

In *Ferguson* v. *Booth,* supra, the deed to the wife was not made by the husband, but he paid the consideration price and caused the deed to be made to her, without words in it indicating that it was intended to create a separate, or other special, estate in her, and without reservation of his rights as husband, and that deed was held to have created a separate estate in the wife.

Now, in the case at bar the husband, Col. Battle, being seised of a fee-simple estate in the land, conveyed it to his wife's brother, Claiborne, by deed, with covenants of general warranty and reciting a valuable consideration, which, as we have seen, was not, in fact paid. Then Col. Battle caused Claiborne to convey

133 Tenn. 20

to the wife by a deed competent in its recitals to a conveyance of the fee and the creation of a separate estate in the wife. Although these two deeds were separated in date of execution by the period of time already set out, it seems reasonable to regard them as one act by the husband, indicating clearly his purpose to have been to create a fee-simple separate estate in the wife, and we might, if necessary, regard these deeds as a surrender by him to her of all the right, title, and interest in the land which he had formerly enjoyed. This view of the matter would be fatal to the chancellor's decree on this branch of the case. But we think there is another more clearly so.

If it be true, as we have held, that the deed from the husband to the brother of the wife extinguished all title in the husband, and vested it in the grantee brother, then the deed of the brother to the wife reciting a valuable consideration and containing apt words for the creation of a separate estate vested that estate in her unincumbered by any rights of the husband. This is perhaps the better view, and it clearly consists with the decision in *King* v. *Coleman,* supra. But it is said for complainants, in support of the decree canceling the deeds to Mrs. Battle, that she never accepted the deed, and therefore it was inoperative to pass title to her. This point seems to be an afterthought. It is not made in the pleadings of complainants. But, passing this, we are satisfied from this evidence, which is, however, largely circumstantial, that Claiborne, the maker of this deed, delivered it to Col. Battle, and he

delivered, or caused the deed to be delivered, to the register, and directed that it be recorded, and afterwards knew of its recordation and assented thereto. We also think Mrs. Battle, the grantee, assented to and claimed under the deed with knowledge that it had been so made and recorded. Under our cases this is sufficient evidence to warrant the conclusion that there was both delivery and acceptance of this deed, especially in view of the fact that there is no direct or circumstantial evidence tending to show the lack of delivery or acceptance. *McEwen* v. *Bamberer,* 71 Tenn. (3 Lea), 576; *McEwen* v. *Troost,* 33 Tenn. (1 Sneed), 186; *Nichol* v. *Davidson County,* 3 Tenn. Ch., 547; *Nailer* v. *Young,* 75 Tenn. (7 Lea), 735-737; *Mason & Holman* v. *Holman,* 78 Tenn. (10 Lea), 315; *Davis* v. *Cross,* 82 Tenn. (14 Lea), 641, 52 Am. Rep., 177; *Davis' Adm'r* v. *Garrett,* 91 Tenn. (7 Pick.), 148-150, 18 S. W., 113; *Land Co.* v. *Hilton,* 121 Tenn. (13 Cates), 308-320, 120 S. W., 162; *Scott* v. *Bank,* 123 Tenn. (15 Cates), 275, 130 S. W., 757; *Swiney* v. *Swiney,* 82 Tenn. (14 Lea), 316.

Another insistence for complainants is that, if the legal title to the land in suit was in Mrs. Battle, by virtue of the two deeds, she estopped herself and her heirs at law from setting it up against the devisees under his will. This insistence is predicated: First, on the ground that she did not claim the land, but, on the contrary, spoke of it as his, that she urged him to will it to her, and leave to her the final disposition of it by her will, and, failing in this, that she induced him

to devise her a life estate in the land, with remainder over to his kin, in substance as his will was finally made; second, that after his will had been made in substantial accord with her wishes, she accepted the provisions made for her thereunder, qualified as executrix, and by so doing elected to take under the will, rather than to dissent from it, and to stand upon her legal rights, and thereby that she and her heirs at law are estopped by her election from claiming title under the deed to her.

As already indicated, we are satisfied from circumstances disclosed by the record that Mrs. Battle had knowledge of the existence of the two deeds, and believed that by them she held the legal title to the land. We think she must have had this knowledge prior to the registration of the quitclaim deeds from Claiborne to her husband in the year 1891; and further, we are of the opinion that she not only knew of her title, but had refused to convey the land to her husband on or prior to the date last named. At that date Col. and Mrs. Battle were well advanced in life. It is clearly to be gathered from this record that dissensions had sprung up between them prior to the recordation of these quitclaim deeds over the question of devolution of the title to the land in suit upon the death of the survivor of them. The bone of contention was whether his or her kin should have the property when each of them had passed away. We think it clear that such dissensions not only existed, but that it had reached a point where it threatened to result in a separation of

these old people. This is a pathetic, but clearly established, fact of the record. Just when these dissensions began is not clearly shown, but that they existed is beyond controversy. The fact that they existed adds strength to a conviction that they were well developed, and even robust, prior to the registration of the two quitclaim deeds. In our opinion, those two deeds would never have been recorded if this wife had not refused to convey the land to her husband. There was then vested in her a separate estate in the land. Under our statutes she was competent to convey the title to her husband. Shan. Code, sec. 4246; *Barnum* v. *Le Master,* 110 Tenn. (2 Cates), 640, 75 S. W., 1045, 69 L. R. A., 353; *Ferguson* v. *Booth,* 128 Tenn. (2 Thomp.), 259, 160 S. W., 67, Ann. Cas., 1915C, 1079. There was no necessity of the recordation of the two quitclaim deeds if the wife was willing to convey to the husband. The second of the two quitclaim deeds was drawn by an eminent member of the Memphis bar, acting as the attorney of the husband. We are unable to perceive that intelligent counsel would have advised the husband to record these two quitclaim deeds if it had been possible to accomplish a revestiture of the title to the land in suit by the simple process of a deed from the wife to the husband. It was not necessary to record the quitclaim deeds in order to get any title out of Claiborne. As a source of title Claiborne was dry when he executed and delivered the warranty deed to his sister, Mrs. Battle. No title remained in Claiborne after that event and this fact must have been perfectly

clear to Col. Battle's legal adviser. It must have been equally clear to this legal adviser that Mrs. Battle was competent to convey her separate estate in the land to her husband.

But, while these matters were all clear to the counsel advising Col. Battle in this transaction, it does not follow by any means that they were clear to Mrs. Battle. She was unlearned in the law; and, while it is manifest that the execution of the quitclaim deeds did not destroy, but only beclouded, her title to the land, beyond all question she was made to believe that the effect of these quitclaim deeds was to take the title out of her. This fact is established by positive evidence coming from a witness produced by complainants, and we think all Mrs. Battle ever said or did in derogation of her own title was caused by the erroneous impression so made upon her mind. This impression was never corrected during her life. She labored under it to the end of her days. When she failed to dissent from the will, when she qualified as executrix thereof and acted as such, and accepted the provision made for her therein, she was wholly ignorant of the fact that the fee-simple title to the land in suit had been vested in her more than thirty years prior to the probation of her husband's will.

After Col. Battle's death, and in respect of the matter of the probating of his will, Mrs. Battle secured counsel, Mr. Murray of Memphis, but she was not advised by him of the true state of her title. He is now of counsel for the complainants in this suit, and testi-

Battle et al. v. Claiborne.

fied as a witness on their behalf. It is not shown that Mrs. Battle ever knew that she had a right to dissent from the will of her husband. Even if she had such knowledge, but did not know or suspect herself to be the owner of the land in suit, there would have been in her mind no good reason for dissenting from the will. On the other hand, had she know that she possessed the true title to the tract of land in suit, good reason would have existed for a dissent, because its value largely exceeded the bequest in her favor of his personal property. The belief she had in the validity of his title to the land was the result of his action in asserting title under the quitclaim deeds, his employment of learned counsel, and, we have no doubt, the employment of means to convince her which are not fully disclosed by the evidence in this cause. Just what was done to produce in her mind the conviction that the quitclaim deeds had divested her of title and vested title in him does not appear, but the result of what must have been done very clearly appears. It is clear that she believed he possessed the true title to the land in suit when she failed to dissent from the will and accepted benefits under it. Whatever was done manifestly was intended to operate to her disadvantage, to induce her to surrender her clear title to the property, and to act in derogation thereof, and all this was done after failure to secure from her a voluntary relinquishment and conveyance of the true title which she held to the land.

Under these facts it is clear that no estoppel *in pais* (leaving out of view for the prpesent the question of election) arises against her representatives in favor of these complainants. In one of our cases it is said:

"To justify . . . this principle of estoppel, it is material that the party should be fully apprised of his rights, and should, by his conduct or gross negligence, encourage or influence the purchase; 'for, if he is wholly ignorant of his rights, . . . or if the purchaser knew them, or if his acts, or silence, or negligence do not mislead, or in any manner affect the transaction, there can be no just inference of actual or constructive fraud on his part.'" *Morris* v. *Moore & Hancock,* 30 Tenn. (11 Humph.), 433.

See, also, *Parkey* v. *Ramsey,* 111 Tenn. (3 Cates), 302-307, 76 S. W., 812, and cases there cited.

The next question is: Must the heirs at law of Mrs. Battle be held concluded by her failure to dissent from her husband's will, by her qualification as executrix and acceptance of benefits thereunder? The solution of this question necessitates a consideration of our statutes upon the subject, some of our decisions, and the doctrine of election as the same has been held to apply to our legislation. Section 4146, Shan. Code, provides:

"A widow may dissent from her husband's will: (1) Where a satisfactory provision in real or personal estate is not made for her; in which case she shall signify her dissent in open court within one year after the probate of the will. (1784, ch. 22, sec. 8; 1851-52, ch.

79, sec. 1.)   (2) Where a provision in-personal estate is made for her, but the whole of the husband's property, including the bequest, is taken for the payment of his debts; in which case, without any formal dissent, she may sue for her dower (1845-46, ch. 214), and in both cases she shall be endowed as if her husband had died intestate.''

The following of our cases involve applications of the widow for dower in the lands of which her husband died seised where she had failed to dissent from his will within the time allowed by the statute, in each of which the claim of the widow to be endowed was rejected on the ground that her failure to dissent within the time allowed by law operated as an election on her part to claim under the will alone: *Reid* v. *Campbell,* 19 Tenn. (Meigs), 378-385; *McDaniel* v. *Douglas,* 25 Tenn., (6 Humph.), 221; *McClung* v. *Sneed,* 40 Tenn. (3 Head), 218-224; *Williams* v. *Gray,* 41 Tenn. (1 Cold.), 105; *Waddle, Admr,* v. *Terry,* 44 Tenn. (4 Cold.), 51, 55; *Waterbury* v. *Netherland,* 53 Tenn. (6 Heisk.), 512.   In some of these cases, in addition to claiming an allotment of dower in the lands of her husband, the widow also sought a distributive share of his personal estate.   This relief was also denied on the ground above stated.

The policy of the legislation, construed by the foregoing decisions, as it appears to us, is twofold: First, in a case where a satisfactory provision in real or personal estate is not made for the widow by the will of her husband out of his estate to enable her to dissent

from his will and take such part of his estate as she
would be entitled to had he died intestate.  The second
policy underlying the statute, as we see it, is to fix a
definite period of time after the probate of the hus-
band's will within which the widow shall be compelled
to elect either to accept and be held to be satisfied by
the provision made for her in the will, or to dissent
from the will.  This second policy of the statute was
designed to accomplish a speedy closing up or admin-
istration of the affairs of the estate of the testator, and
a definite adjustment of the rights of those interested
in the estate; that is, the rights of the widow, on the
one hand and the legatees, on the other, or in cases of
partial intestacy of the widow, on the one hand, and the
legatees and distributees, on the other.  To effectuate
the above purposes of the statute, the duty of election
which it imposes on the widow has been enforced with-
out variation except in the case of *Demoss* v. *Demoss,*
47 Tenn. (7 Cold.), 256, but that case was overruled by
*Walker* v. *Bobbitt,* 114 Tenn. (6 Cates), 700-710, 88 S.
W., 327.  In the case at bar the heirs at law of the
widow are not seeking to enforce her rights as a dis-
tributee in the estate of her husband, nor does the case
involve an application by the widow to have dower set
apart out of her husband's land.  On the contrary, in
this case the heirs at law of the widow are seeking to
be let into her estate in a tract of land which we have
heretofore held was her property at the time her hus-
band's will was made.  If it was her property at that
date, her heirs at law are entiteld to be let into the en-

Battle et al. v. Claiborne.

joyment of it, unless her conduct during life precludes them as an estoppel. Did her conduct amount to an estoppel under the doctrine of election? We have three cases which shed light upon this question: *Parkey* v. *Ramsey,* 111 Tenn. (3 Cates), 302, 76 S. W., 812; *Walker* v. *Bobbitt,* 114 Tenn. (6 Cates), 700, 88 S. W., 327; *Rowlett* v. *Rowlett,* 116 Tenn. (8 Cates), 458, 95 S. W., 821. None of these cases may be said to determine this controversy, but the principles announced in each of them enter largely into the determination of the present case.

It is laid down in Mr. Pomeroy's work on Equity Jurisprudence (volume 1, sec. 472) as a fundamental rule that:

"In order to create the necessity for an election, there must appear on the face of the will itself, or of the other instrument of donation, a clear, unmistakable intention on the part of the testator or other donor to dispose of property which is in fact not his own. This intention to dispose of property which, in fact, belongs to another, and is not within the donor's power of disposition, must appear from the language of the instrument as unequivocal, which leaves no doubt as to the donor's design; the necessity of an election can never exist from an uncertain or dubious interpretation of the clause of donation. It is the settled rule that no case for an election arises unless the gift to one beneficiary is irreconcilable with an estate, interest, or right which another donee is called upon to relinquish; if both gifts can, upon any interpretation of

which the language is reasonably susceptible, stand together, then an election is unnecessary.''

And in section 473 on the same subject he says:

''If the language of the donation is ambiguous, so that its correct interpretation is at all doubtful, it is now a firmly established rule that parol evidence of matters outside the instrument cannot be admitted for the purpose of showing an intent of the donor to dispose of property which he knew did not belong to him, and thus create the necessity for an election. The intent of the donor to dispose of that which is not his, ought to appear upon the instrument.    There were early decisions which acted upon another view, and received such evidence as controlling, but they have been completely overruled by subsequent authorities. Of course, extrinsic evidence is always admissible in such cases, as well as in all others arising from wills and deeds in order to show the surrounding circumstances, the nature, situation of the property, the relations of the donor to the beneficiaries, and the like facts, which place the court in the shoes of the donor; but such evidence can go no further.''

Now, let us apply the above principles to the language of Col. Battle's will herein before set out. He says: ''I give and bequeath to (naming his wife) all of my land,'' etc. Manifestly, Col. Battle, as well as his wife, was convinced, when he made his will, that the land in suit was his land. He knew it had been his land prior to the date of his deed to Claiborne. He knew Claiborne had paid him nothing for the land.

He knew his wife had paid Claiborne nothing for the
land, and evidently he believed the fact to be that the
two quitclaim deeds from Claiborne to himself had
revested in him the legal title to the land.. He was not
learned in the law, and doubtless looked upon the land
in good morals as his property, and, though he must
have known that the recital of the last quitclaim deed
to the effect that his deed to Claiborne was a mortgage
was untrue, yet we think it is clear that he considered
that recital sufficient in law to revest the title to the
land in him; and so, in his will, he called it "my land."
It thus appears on the face of his will that it was not
his purpose or intent to give his wife a life estate in
her own land, but to give her a life estate in his land.
It fails to appear on the face of his will that he in-
tended to give some of his property to her, and her
land to another person.   On the contrary, it appears
from the face of his will that his purpose was to give
her a life estate in his land, the same to be sold at her
death, and the proceeds divided among the devisees
named in his will.   Mr. Pomeroy, by way of illustra-
tion, in section 464, vol. 1, gives the early case, decided
by Lord Chancellor Cowper, to be one where the duty
of election arose:

"A. was seized of two acres, one in fee, t'other in
tail; and having two sons he, by his will, devised the
fee simple acre to his eldest son, who was issue in tail;
and he devised the tail acre to his youngest son, and
dy'd; the eldest son entered upon the tail acre; where-
upon the youngest son brought his bill in this court

against his brother, that he might enjoy the tail acre
devised to him, or else have an equivalent out of the
fee acre, because his father plainly designed him some-
thing.''

The duty of election was held to arise in that case
because the devise of the fee acre to the eldest son was
of property owned by the testator made with the tacit
condition that the eldest son should suffer the younger
son to quietly enjoy the tail acre devised to him, over
which, however, the testator knew he did not possess
the power of disposition.

It clearly does not appear that Col. Battle knew he
did not possess the power of disposition over the land
in controversy. He was convinced that he had the
power of disposition over it. He called it ''my land,''
disposed of it as his own property, and was manifestly
only undertaking by the execution of his will to pass
over to the objects of his bounty the title which had
originally been vested in him, which he considered still
to exist in him by operation of the second quitclaim
deed.

To hold, on the face of this will, and in the light of
all the facts of this record, that Col. Battle intended the
bequest of the personalty to his wife by his will to be
upon condition that she surrender her title to the land
in suit would be to convict him of a fraudulent purpose
in the execution of his will, considering that act in con-
nection with what has heretofore been said of the means
by which he accomplished a conviction in the mind of
his wife that she had no title to the land, in which event

the solution of this case would depend upon the prin-ciples applied in *Smart and Wife* v. *Waterhouse et al.,* 18 Tenn. (10 Yerg.), 95.

It is unnecessary to adopt so harsh a view of his purposes. The more charitable view, and the one more consistent with honesty of purpose and fair dealing on the part of each of these old people, is that each of them, at the time of the registration of the quitclaim deeds, believed themselves to be the owners of the land; Col. Battle because he had never received any-thing of value in consideration of his deed to Claiborne. She, on the other hand, believed herself to be the owner, basing this claim on the deed to her and on the ground that he had used certain of her money received from sales of other land. But, conceding an honest purpose on his part, through all these dealings, down to and including the execution of his will, we place the determination of the case upon other ground than that of fraudulent conduct or intention on his part. In *Walker* v. *Bobbitt,* supra, this court, speaking of the doctrine of election, said:

"This doctrine properly arises where a testator man-ifests a clear intention to dispose of property not his own, and by other parts of his will, from his own estate, confers benefits upon the owner of that property."

The entire doctrine of election is based either upon a condition expressed in the deed or will of the donor or a condition which the law implies on account of what appears upon the face of the instrument. Certainly there is no express condition appearing on the face

of Col. Battle's will, and, in view of his claim of ownership in his own right of the land in suit, no tacit condition can be held to arise by implication of law. Such a construction of his will is rebutted by the claim of ownership in himself so clearly shown on the face of the will and supported by the undisputed facts and circumstances of the record.

Back of the express or implied condition in the deed or will above referred to Mr. Pomeroy bases the doctrine of election on the maxim that he who seeks equity must do equity. Volume 1, sec. 465. If so, did equity demand an election on the part of Mrs. Battle, laboring, as she did, until her death, under a delusion produced by the acts of her husband? For general authority on this point see *Owens* v. *Andrews,* 17 N. M., 597, 131 Pac., 1004, 49 L. R. A. (N. S.), 1072, and note. But it is insisted that the rule of election established by the statute applies. This rule is by no means of universal application. It was not enforced against the rights of the wife acquired by an antenuptial contract with her husband in *Williams* v. *Gray,* 41 Tenn. (1 Cold.), 105; nor against the rights of the wife in land the title to which the husband held as her trustee by construction of law in *Bible* v. *Marshall,* 103 Tenn. (19 Pick.), 324, 52 S. W., 1077; nor where the husband and wife owned the land as tenants by entireties, in *Parkey* v. *Ramsey,* 111 Tenn. (3 Cates), 302, 76 S. W., 812, and *Walker* v. *Bobbitt,* 114 Tenn. (6 Cates), 700, 701, 88 S. W., 327; nor against the right of the widow to the exempt property of her husband's estate, under sec-

Battle et al. v. Claiborne.

tion 4023, Shan. Code, in *Rowlett* v. *Rowlett,* 116 Tenn. (8 Cates), 458, 95 S. W., 821; nor do we think the rule of the statute applies under the peculiar facts of the present case.

The next insistence for complainants is that John A. Claiborne, who conveyed the land in dispute to Mrs. Battle, is estopped by the special warranty contained in his deed to Fred Battle, dated January 5, 1891. The language of this special warranty has been copied supra.

There is no merit in this insistence. This special warranty deed was procured from Claiborne by Col. Battle in an effort to becloud the title of Mrs. Battle. Col. Battle was estopped to accept and predicate rights upon either the original quitclaim deed or the special warranty deed. *Ferguson* v. *Booth,* 128 Tenn. (1 Thomp.), 259, 160 S. W., 67, Ann. Cas., 1915C, 1079; *Barnum* v. *Le Master,* 110 Tenn. (2 Cates), 640, 75 S. W., 1045, 69 L. R. A., 353. Neither can those in privity of title with Col. Battle claim any rights either under the quitclaim deed or the special warranty deed. A court of equity will decline to hear them set up any rights under those deeds.

Nor do we think there is any merit in complainants' insistence that Col. Battle acquired title to the land in suit by adverse possession. The land in suit was timbered land, and such possession as was had of it was the joint possession of the huband and wife, and not advere as against either of them.

133 Tenn. 21

It results that the decree of the chancellor must be reversed, and complainants' bill dismissed, and a decree will go in this court in favor of defendants under the cross-bill. The case will be remanded to the chancery court for such further proceedings as may be necessary and on the remand a copy of this opinion will accompany the *procedendo*.