## J. F. MURRAY v. E. GOUGE, et al.

Eastern Section.   December 18, 1926.

No petition for Certiorari was filed.

1. **Bills and notes. Consideration. Where one endorsed a note to have a fund released he is an endorser for consideration.**
    Where plaintiff sold to the president of a corporation certain corporation stock and the president issued to him notes signed by the corporation in payment thereof and later when the corporation became insolvent, plaintiff filed a bill in equity attaching certain money due the corporation and defendant in consideration of plaintiff releasing the money, agreed to endorse the note in question, held that there was a consideration for the endorsement and the defendant was liable thereon.

2. **Bills and notes. A note given in compromise to settle a disputed claim is supported by a valid consideration.**
    It is undoubted that a note given to compromise, settle or procure a release from a disputed claim, the validity of which is doubtful, rests upon a good and sufficient consideration, even though ultimately it appears that the claim was wholly unfounded, and although the claimant may have had no intention of resorting to an action to enforce it.

3. **Estoppel. Where a party influenced another to release an attachment by giving a note he will be estopped to deny the validity of the note.**
    When a fact has been admitted or asserted for the purpose of influencing the conduct, or deriving a benefit from another, so that it cannot be denied without a breach of good faith, the law enforces the rule of good conduct or morals, as a rule of policy and precludes the party from repudiating his representations.

Appeal from Chancery Court, Sullivan County; Hon. Jos. A. Cald-
well, Special Chancellor.

Affirmed.

Burrow & Burrow and H. T. Campbell, of Bristol, for appellant.
Bachman & Brown, of Bristol, for appellee.

SNODGRASS, J. The bill in this cause was filed to collect from E.
Gouge and W. A. Fincannon, the two endorsers, three certain prom-
issory notes. The notes had been executed by J. S. Sherfey Com-
pany, a corporation, that subsequently went into bankruptcy and
was wound up, it seems as an insolvent corporation. The corporation
was not sued. Each of these notes was dated September 11, 1923. One
was for $400, payable eight months after date, one in the same
amount payable sixteen months after date, and one for $385.15, pay-
able twenty-four months after date. Each note drew interest from
date, and if not paid at maturity, and if placed in the hands of an
attorney for collection, evidenced a further indebtedness of ten per
cent of the amount of the note, which was to be included in any
judgment rendered thereon.

Answer was filed to the bill and an amendment that was allowed
to be filed, proof was taken and the cause heard before the Chancel-
lor, who gave decree in favor of the complainant and against the de-
fendants for the full amount of the notes, with interest and attorney's
fees, together with the costs of the cause. Defendants have perfected
an appeal to this court, and have made six assignments of error, as
follows:

"1. The court erred in holding that the notes sued on in this
cause were not executed by J. S. Sherfey Company, a corporation, for
repurchase of its stock."

"2. The court erred in holding that the appellants derived no
benefit from the execution of said notes."

"3. The court erred in holding that the appellants are estopped
to claim that said notes are invalid."

"4. The court erred in holding that said notes were supported
by any consideration."

"5. The court erred in failing to hold that said notes are in-
valid."

"6. The court erred in giving judgment against appellants upon
said notes."

A short history of the facts of this case will, we think, dispose of
these particularizations, which may be all comprehended under the
sixth and last. The complainant, Murray, was a clerk in the store of
J. S. Sherfey, in Bristol, Tennessee, at the time Sherfey incorporated
same and transferred its goods, rights in the building, accounts, etc.,
to the corporation, in return for the recited consideration of $20,000,

payable by the issuance to himself of $17,985 of its stock, and the further sum of $2,015 in cash. The books of the corporation show the stock to have been subscribed for as follows: J. S. Sherfey, $17,985; J. F. Murray, $2,000; T. A. Phillips, $5; C. D. Hess, $5; Robert Yost, $5; and that on the 21st day of May, 1921 four certificates of stock of $500 each were issued to the said Murray for the $2,000 of stock subscribed by him, thus evidencing his stock in the company, which it appears took the name of the J. S. Sherfey Company. At the time of this incorporation the company was indebted to the complainant Murray for wages.

On the 1st day of February, 1923 the said Sherfey bought this stock of the complainant, settling also the indebtedness due the complainant, by the execution of twenty-six $100 notes, each dated the 1st day of February, 1923, and falling due consecutively on the 1st of each following month; provided, however, that if three of them should get in arrears the whole should become due. The notes were delivered to complainant, and a life insurance policy in the Atlantic Life Insurance Company was transferred to him as security, though in a sum less than the aggregate amount of the notes. Sherfey it seems paid one of these notes, but allowed the remainder to mature by default. The complainant applied the cash value of the life insurance policy toward the liquidation of the indebtedness and turned over fourteen of the notes to the said Sherfey, although the notes turned over included a balance of $98.75 which the amount realized on the policy failed to cover, and filed a bill against him on August 18, 1923 in the chancery court at Bristol to recover remainder of said notes. The said J. S. Sherfey Company was also made party to this bill, as was certain insurance companies. The bill sought to enjoin the defendant Sherfey from collecting the insurance on the stock of goods, that had in the meantime been burned, and asked that an attachment by garnishment issue against the defendant insurance companies for the purpose of impounding a sufficient sum to satisfy complainant's debts according to his complaint. It was averred in the bill that the J. S. Sherfey Company is a corporation under the laws of the State of Tennessee, was organized for the purpose of carrying on a retail clothing store in Bristol, Tennessee; that about ten days ago (meaning about August 8, 1923) said corporation had the misfortune to have its stock of ready-made clothing, hats, etc., destroyed by fire; that all its visible effects having been destroyed by fire the said J. S. Sherfey Company would give up its business and close its doors; that the business had not been a success. It was charged that the capital stock of the company was $19,000; that by the purchase from complainant of the $2,000 stock already mentioned, all, or practically all of the capital stock, is owned by J. S. Sherfey. It was averred that it will be seen that the J. S. Sherfey

Company as a corporation has ceased to do business, and its assets, consisting of fire insurance on its goods, fixtures, etc., should be distributed, in which event defendant J. S. Sherfey will, it was averred, receive practically all of the insurance, amounting to from $12,000 to $15,000; that some of the insurance policies were in different companies named in the caption. It was charged that defendant Sherfey was insolvent and that, unless complainant obtained equitable relief, he would be remediless and would lose his debt. It was claimed, for reasons set out in the bill, that complainant had an equitable lien on the insurance. It was further averred that complainant is advised he has the right to enjoin defendant J. S. Sherfey from collecting, appropriating or otherwise disposing of the proceeds arising from the insurance policies on the goods and chattels of the said J. S. Sherfey Company, without making provision for the payment of complainant's debt hereinbefore mentioned, which it was averred amounts in the aggregate to about $1350; that complainant is further advised he has the right to enforce his equitable lien on the said insurance fund by having same impounded and held in court for the satisfaction of his debts, and to that end that he may attach by garnishment a sufficient amount to satisfy complainant's debt of about $1350.

It appears that at the time the defendant J. S. Sherfey was indebted to the bank in the sum of $4500, and that the defendants to this bill, Gouge and Fincannon, were endorsers on this note, and negotiations were entered into by them with the complainant in the suit against Sherfey, et al to compromise same, in order that the insurance might be released so that it could be made available to the application of this note, which was secured by these two endorsers. They submitted a proposition to him through his attorney, and complainant's account of how the notes sued on were executed and the case thus compromised is as follows:

Examination by Judge Burrow:

"Q. Did that suit ever proceed to trial? A. No sir."

"Q. Why not? A. Well, we compromised."

"Q. State how you compromised, with whom, and the result of it. A. Well you came to me, the first I knew of it, you came in there at the store where I was working and stated these words to me; you said they wanted to make three notes and make them payable eight months apart, and get W. A. Fincannon and E. Gouge to endorse them, and get me to turn that money loose that I had tied up. I said all I want is my money, and to be safe, and you said if they sign the notes you are safe all right."

"Q. Did Gouge afterwards come to you? A. Yes, Gouge came in about fifteen or twenty minutes after you left."

"Q. State what he said. A. He said: 'Has judge been to see you?' And I said yes sir. He said they had agreed on three notes, and I said I would rather not do that. He said they would endorse them, and I told him I would rather you would not do that; and he said: 'Do you mean to tell me you would not take me and Fincannon on the notes?' I said: 'I mean this, I would rather not. I want my money, and I don't want to give you any trouble. (He was interrupted with an objection, but continued) He said: 'Joe, you don't understand what I mean. I worked you for several years and gave you a job, and you won't accommodate me.' And I said: 'I will accommodate you.' He said: 'You know I am on a note over at the bank for $4000 or $5000,' (Question interrupting overruled) and he says: 'It has been renewed twice and is going to be due again next week, and I think you could accommodate me that much.' I said: 'Yes, I will accommodate you.' I picked up my hat and we walked up to the bank of Bristol, and Bob Kelley drew the notes, and he took them away and got them signed and brought them back to me."

"Q. Who got them signed and brought them back to you? A. Mr. Gouge, the defendant."

"Q. Whose note did he say he and Fincannon were security on for $4000 or $5000? A. He said for J. S. Sherfey."

"Q. You may state whether or not E. Gouge made any statement with reference to getting released from these notes. A. Yes sir."

"Q. State what it was. A. He said that was what he wanted to fix these for; he wanted to get loose from that $5000 note. He said he would rather pay all your note for $1200 than pay his for the $4000 or $5000."

"Q. Did he say anything about how he could get off this note or pay it? A. Yes, he said he had arranged for them to turn the insurance over to him."

"Q. With whom? A. J. S. Sherfey. He had arranged for paying the note, and would pay the balance of the money over to him."

"Q. Over to whom? A. J. S. Sherfey."

The truth of this testimony as to how the notes sued on came to be executed is not seriously controverted, and is practically conceded by Mr. Gouge, though he states that the note upon which they were endorsers at the bank was for $6200, and that it was signed by the J. S. Sherfey Company instead of J. S. Sherfey. We do not think this makes any material difference. In either event we think it disposes of adversely all the assignments of error.

It is not necessary in this case to examine the authorities cited in the brief as holding that a corporation cannot purchase its own stock. Such is not this case. The stock was sold to J. S. Sherfey individually, who executed the twenty-six notes in the sum of $100 each, which amount also included about $600 of indebtedness due from the company to complainant as wages, and the stock became the property of Sherfey.

It may be true that in time, and as between creditors of the corporation to whom the matters were open, and the complainant, that some question might have been made as to the right of J. S. Sherfey to sign the corporation's name to a note for his own personal obligations, but such a question is not in the circumstances of this case open to endorsers, who for the consideration of having the funds released so as to be applied to the liquidation of a much larger note upon which they were bound, procured the compromise and dismissal of complainant's case by endorsing the notes securing him in the the smaller sum. This is something more than an accommodation endorsement. It was upon a valuable consideration, and bound them. It is immaterial that the complainant's suit might have been successfully contested, though it does not appear from this record that it could have been.

"It is undoubted that a note given to compromise, settle or procure a release from a disputed claim, the validity of which is doubtful, rests upon a good and sufficient consideration, even though ultimately it appears that the claim was wholly unfounded, and although the claimant may have had no intention of resorting to an action to enforce it." 3 R. C. L., sec. 137, page 941; 25 L. R. A., (N. S.) 276-278 notes; 6 Ency. Law, 736.

"The surrender or cancellation of a note or bill of a third person held by a creditor, has been adjudged such consideration as the law requires." 4 Ency Law, 188.

It can make no difference that the company later went into bankruptcy. Complainant, having independent security, was not required to file his notes. The liability is joint and several.

This released insurance was applied to the satisfaction of the said larger indebtedness, whether it was $4500 or $6200, at least with the exception of about $800 which the defendants say the insurance lacked. What the reasons were for compromising with the insurance company at a lower sum which occasioned the failure of the insurance to satisfy the whole of the large note, does not appear, but it does appear that the complainant in this case had and was seeking to obtain such an advantage by the filing of his bill that the corporation, Sherfey and these defendants in this cause were willing to and urgently solicited the complainant at that stage of the bill, before all the impounding process had issued, and before making any

defense to the bill, to compromise upon the terms they offered, which he reluctantly did, thus losing whatever advantage the status of his litigation gave him, without any fraud or misrepresentation upon his part, and each of these defendants are now by such action estopped to deny the effect of what they brought about.

"An estoppel is where a man is concluded and forbidden by law to speak against his own act or deed; yea, even though it is to say the truth." Battle, et al. v. Claiborne, 133 Tenn., 303.

"When a fact has been admitted or asserted for the purpose on influencing the conduct, or deriving a benefit from another, so that it cannot be denied without a breach of good faith, the law enforces the rule of good conduct or morals, as a rule of policy, and precludes the party from repudiating his representations. Ruffin v. Johnson, 5 Heisk., 604-609; Russell v. Colgar, 4 Heisk., supra; Wattman v. Lyons, 9 Lea, 566; Allen v. Westbrook, 16 Lea, 566-71; 1 Green. on Ev., sec. 27;" Covington v. McMurray, 4 Higgins, 392.

The foregoing is practically the conclusion of the Chancellor, and his decree is affirmed. Decree will be entered here against defendants and their security upon the appeal bond for the sum decreed by the Chancellor, with interest from the date of such decree, together with costs.

Portrum and Thompson, JJ., concur.