MYRICK et al. v. JOHNSON et al.—160 S. W. (2d), 185.

Middle Section. October 11, 1941.

Rehearing Denied November 26, 1941.

Petition for Certiorari denied by Supreme Court, April 4, 1942.

484

J. G. Lackey, of Nashville, for appellants.
Roberts & Roberts, of Nashville, for appellees.

FELTS, J. S. J. Myrick and Joseph F. Creech filed the bill in this cause against Mrs. Sarah Campbell Johnson and her husband, alleging that she had located her fence and hedge three or four feet over her line on complainants' two lots and was claiming so much of their land.

Their lots and hers all front on the east side of the Murfreesboro Pike, in the village of Una, Davidson County, and were carved out of the land of G. W. Clements and wife. Clements and wife conveyed to complainant Creech a lot fronting 100 feet on the pike and running back between parallel lines 508 feet. Out of the southwest corner of this lot, Creech conveyed to complainant Myrick a lot fronting 50 feet on the pike and extending back between parallel lines 200 feet, and lying immediately north of the remaining land of Clements and wife; so that Clements' north line for the first 200 feet was Myrick's south line and for the next 308 feet was Creech's south

line. Some years later Clements and wife conveyed the remainder of the land to Mrs. Johnson, and near her north line she put the fence and hedge which are alleged to be over the line on the land of complainants.

The bill prayed that the true boundary line between complainants' lots and defendant's lot be determined and that her claim to any part of the land north of that line be removed as a cloud on their title.

Her answer was that the location of her fence and hedge was not complainants' land but was wholly within her line. The boundary line, she averred, was where an old picket fence had formerly stood, parts of which were still to be found in the ground; and her fence and hedge were about one foot on her side or south of that old fence. She also alleged that the old picket fence was still standing when Clements and wife conveyed the lot to Joseph F. Creech; that they intended to sell, and he intended to buy, only the land north of the old fence and to make it the boundary line between the lot sold to him and that retained by them; that if their deed, as executed, included and conveyed to him any part of the land south of the old fence, it was because of a mutual mistake of the parties; and that she was entitled to have that deed reformed so as to correct the mistake and make the deed conform to the real intention of the parties. And she alleged that Myrick had purchased his part of the Creech lot, knowing and understanding that its southern boundary line was the old picket fence. She further alleged that she and her predecessors, Clements and wife, had held adverse possession of all the land south of the old picket fence continuously for more than seven years, and she pleaded the seven years' statutes of limitation.

Upon a reference the master reported that the true location of the boundary line was as called for by the deed of Clements and wife to Joseph F. Creech and as alleged in the bill; that Mrs. Johnson's lot did not overlap on the lot conveyed by Clements and wife to complainant Creech; and that complainants were in possession of the strip of land in dispute under their deeds of November 1, 1922 and November 21, 1924, respectively, until Mrs. Johnson took possession of this strip by enclosing it some two months after the date of her deed, March 22, 1929, and she held possession until this suit was brought on March 2, 1932. This report was filed March 28, 1940. Mrs. Johnson made numerous exceptions to it. On January 27, 1941, the Chancellor overruled all her exceptions (except some based on the master's exclusions of evidence), confirmed the report, decreed that the boundary line be established as set out in the report, directed that Mrs. Johnson remove her fence and hedge, and adjudged that she pay the costs.

She appealed and insists that the Chancellor should have decreed that the boundary line was where the old picket fence had stood, and

should have sustained her defenses of mutual mistake and the statutes of limitation. She also insists that the Chancellor erred in ordering the reference and in excluding certain evidence.

We think the proof supports the Chancellor's location of the line. The deed conveying the land to Clements and wife made J. W. Walker's south line their north line and his southwest corner their northwest corner. The calls in this deed were:

". . . beginning at a point on the easterly side of said Pike *at J. W. Walker's corner*, running thence southerly with the easterly margin of said turnpike 18.72 rods to Towns line; thence with Towns line easterly 18 rods to a stake or point; thence northerly 21 rods and 20 links to J. W. Walker's line; thence with his line 31 rods to the Murfreesboro Pike, or point of beginning. . . ."

The evidence locates this line and corner of Walker. Trees are shown to be growing along the line, and until recently a fence post stood at the corner, and is now replaced by an iron pin. Clements and wife, on November 22, 1920, conveyed to J. O. Creech, brother of complainant Creech, the northerly 75 feet of this tract, describing it as fronting "seventy-five (75) feet" on the pike and extending back "511½ feet more or less between parallel lines following J. W. Walker's southerly line to a drain." On November 1, 1922, Clements and wife conveyed to complainant Creech the next 100 feet south of the J. O. Creech lot. The calls in this deed were:

". . . beginning at J. O. Creech's corner, thence southerly with the easterly margin of said Turnpike one Hundred (100) feet, thence northeasterly five hundred, eight (508) feet, more or less, between parallel lines, following J. O. Creech's southerly line, to a drain. . . ."

Thus the call measuring J. O. Creech's frontage was, "thence southerly with the easterly margin of said turnpike seventy-five (75) feet;" and the call measuring Joseph F. Creech's frontage was, "thence southerly with the easterly margin of said Turnpike one Hundred (100) feet." These calls were not for objects but for exact distances. There being nothing else in the deeds to aid in determining what was intended to be conveyed, these calls are conclusive of what was conveyed. Cf. Vanderbilt University v. Williams, 152 Tenn., 664, 670, 280 S. W., 689. So the south line of the Joseph F. Creech lot (now owned in part by him and in part by complainant Myrick) begins at a point in the east margin of the pike 175 feet south of J. W. Walker's southwest corner, and runs parallel with Walker's south line 508 feet more or less to a drain. The Chancellor's decree so located it.

This line, thus located, is the boundary between complainants' lots and Mrs. Johnson's lot. It was made such by her deed, by which Clements conveyed to her the land south of this line, making it her north line. The calls in this deed were:

". . . beginning at a point on the easterly side of said turnpike at Marshall Town's corner; thence northeasterly with said Town's line 330 feet more or less to a drain; thence northerly with said drain 280 feet more or less to J. F. Creech's corner; thence southwesterly 508 feet more or less with J. F. Creech's and Jesse (S. J.) Myrick's lines respectively to the Murfreesboro Pike; thence southerly with said pike 141 feet more or less to the point of beginning. . . ."

██ Clements originally had a frontage of only "18.72 rods," or 308.88 feet. After he conveyed to the Creeches 175 feet of this, he had left only 133.88 feet which he could convey to Mrs. Johnson; and the fact that he described her frontage as "141 feet more or less," of course could not affect the rights of complainants.

██ Mrs. Johnson insists that if the deed of Clements to complainant Creech included and conveyed to him the strip of land in dispute, this was because of a mutual mistake of the parties, and the deed should be reformed so as to exclude this strip and leave it to pass under her deed. As vendee of Clements, she has the same equity he had, and by answer she may assert it as a defense against the relief prayed by Creech and also against that prayed by Myrick, if he was not an innocent purchaser; but the burden is upon her to prove the mistake by the clearest and most satisfactory proof and beyond all reasonable controversy. 2 Pomeroy's Eq. Jur., secs. 838, 845, 859; Battle et al. v. Claiborne, 133 Tenn., 286, 301, 180 S. W., 584, 587; Jones v. Jones, 150 Tenn., 554, 595, 266 S. W., 110, 121.

The evidence is that many years ago there had been a picket fence where Mrs. Johnson planted the hedge. Someone who owned the property before Clements had put up this fence. It ran back from the front and joined to the southwest corner of a barn. When Clements sold the lot to complainant Creech, this old barn and parts of this old fence were still standing. Complainant Creech was in Oklahoma and his brother, J. O. Creech, negotiated the purchase for him. Clements testified that he intended to sell only that part of the land north of the old fence, including the old barn, to Creech; that he told J. O. Creech that he would sell "to the picketing fence," and that it "was understood that he was buying to the picketing fence." J. O. Creech was a witness, but was not examined or cross-examined on this point. The deed was written by W. E. Harwood, brother-in-law of Clements, who had written Clements' deed to J. O. Creech and later wrote his deed to Mrs. Johnson. Clements and Harwood were alone when the deed was written. Clements said he told Harwood he was "selling to the picketing fence." He was then asked by Mrs. Johnson's solicitor:

"Q. While he was writing that deed, did you have any discussion with him about the front footage?

"A. He got to where the front footage was called for and he said a hundred feet and I said, wait a minute, Eph, isn't a hundred feet there

and he said, I will put in here more or less, and he thought there was a hundred feet in there and I thought it lacked a little.

'Q. At that time, did he advise you what the effect of putting more or less in there would be?

"A. He said, I can put more or less in there and that would answer the purpose.

"Q. Did you sign that deed under the idea and under the advice and did you believe that advice, that it was all right?

"Mr. Roberts: Objected to for the same reason.

"(Sustained defendant excepts, Jas. E. Covington, D. C. & M.)

"(Sustained defendant excepts, Newman, Chancellor.)

"A. I thought it was all right."

This is the whole of what he said to show he acted under a mistake in executing the deed. Treated as competent, this evidence, we think, fails to establish any mistake. He was under no mistake as to the terms of the deed or the "foot frontage." He knew it was less than 100 feet to the old fence, and he knew this call in the deed for 100 feet would go beyond the fence. While he does say Harwood said it "would answer the purpose" to put "more or less" in this call, he nowhere says he thought this had been done when he signed the deed. He could read and write, was a man of intelligence, education, and business experience. He does not claim that Harwood misread the deed to him, or that he misread it himself. He offers no explanation for signing the deed without the change which he says Harwood suggested to prevent the call from going beyond the fence. He was asked, "Did you sign that deed under the idea and under the advice and did you believe that advice, that it was all right?;" and he answered, "I thought it was all right." What does this mean? That he thought the deed had been changed to "answer the purpose?" Or that he thought it was all right as drawn? This is too doubtful, vague and unsatisfactory to move a court of equity to reform a solemn written instrument. In Battle et al. v. Claiborne, supra, the Court, quoting from an earlier case, said:

"'If the proofs are doubtful and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief, upon the ground that the written paper ought to be treated as a full and correct expression of the intent, until the contrary is established beyond reasonable controversy.' Talley v. Courtney, 48 Tenn. (1 Heisk.), 715." [133 Tenn., 286, 180 S. W., 587.]

The evidence wholly fails to establish a mistake. At most it merely leaves it doubtful whether Clements signed the deed through inattention or acquiescence in it as drawn. In neither case would he, or his privy, be entitled to reformation. Inattention, as distinguished from mistake, is no ground for reformation. Jones v. Jones, 150 Tenn., 554, 595, 266 S. W., 110, 121. Nor will reformation be decreed where the written instrument is drawn exactly as it was

intended. Webster v. Stark, 78 Tenn. (10 Lea), 406; Pittsburg
Lumber Co. v. Shell, 136 Tenn., 466, 189 S. W., 879; Walker v.
Walker, 2 Tenn. App., 279, 288, 289; Nashville Trust Co. v. Winters,
23 Tenn. App., 262, 266, 267, 130 S. W. (2d), 152, 155.

 Mrs. Johnson's pleas of the statutes of limitation are un-
supported. Complainant Creech went into possession of his lot under
his deed in November 1922, and kept possession of all the land except
the part he conveyed to Myrick on November 21, 1924; and after that
Myrick held possession under his deed. Their respective possessions
extended to the limits of the boundaries described in their deeds.
Kittel v. Steger, 121 Tenn., 400, 117 S. W., 500. Clements seems
to have used part of the strip in dispute for a while as a driveway,
but there is no evidence that he ever gave either of complainants any
intimation that he was claiming adversely to them. Thus complain-
ants held possession of this strip until Mrs. Johnson took possession
by enclosing it in 1929 or 1930, only two or three years before this
suit was brought.

 The other matters complained of by appellant are imma-
terial. If the reference to the master was improper, the only con-
sequence of this would be that the Chancellor's concurrence with the
master's report would not be binding upon us as a concurrent finding
of fact. Ingram v. Stein, 23 Tenn. App., 105, 126 S. W. (2d), 891.
We have not so considered it, but have reached our conclusions above
stated upon a review of all the evidence, including that which was
excluded. The evidence excluded was properly excluded because it
tended to prove not a mistake in making the deed, but a prior oral
understanding to modify its terms. Goode v. Riley, 153 Mass., 585,
587, 28 N. E., 228; Teague v. Sowder, 121 Tenn., 132, 149, 150, 114
S. W. (2d), 584; Searcy v. Brandon, 167 Tenn., 218, 68 S. W.
(2d), 112.

All the assignments of error are overruled and the decree of the
Chancellor is affirmed. Mrs. Johnson and the surety on her appeal
bond will pay the costs of the appeal.

Crownover, P. J., and Howell, J., concur.

On Petition for a Rehearing.

FELTS, J. Mrs. Johnson petitions for a rehearing upon
our decision denying her defenses of mutual mistake and the statutes
of limitation. In support of the petition learned counsel makes
an able, earnest, and lengthy argument; but it is only a reargument
of matters of law and fact already thoroughly argued by counsel
and considered and determined by us. It points out no matter
overlooked, but only reargues the things which counsel says were
improperly decided by us. "The office of a petition to rehear is to
call the attention of the court to matters overlooked, not to those
things which the counsel supposes were improperly decided after

490

full consideration." Louisville & N. Railroad Co. v. United States Fidelity & Guaranty Co., 125 Tenn., 658, 691, 148 S. W., 671, 680. A petition for a rehearing which points out no material matter of law or fact overlooked, but merely reargues matters already considered and determined, should be denied. Badger v. Boyd, 16 Tenn. App., 629, 645, 65 S. W. (2d), 601; see 167 Tenn., 703; Melody v. Hamblin, 21 Tenn. App., 687, 705, 115 S. W. (2d), 237, 248; Fortune v. McGinn et al., 24 Tenn. App., 36, 139 S. W. (2d), 256.

The petition is denied at petitioner's cost.

Crownover, P. J., and Howell, J., concur.