HERMAN H. LOFTIS et ux. Complainants-Appellants,
v. THE STUYVESANT INSURANCE COMPANY et
al., Defendants-Appellees. —390 S.W.(2d) 722.

Middle Section. December 31, 1964.

Rehearing by Defendant Denied January 29, 1965.

Complainant's Petition to Rehear Granted January 29, 1965.

Certiorari Denied by Supreme Court May 3, 1965.

372

Claude Callicott, Nashville, for complainants-appellants.

Dan McGugin, Nashville, for the Stuyvesant Ins. Co. of New York, defendant-appellee.

Tyree Harris, Nashville, for Pioneer Finance Co. and Irving Leeds, Trustee, defendants-appellees.

CHATTIN, J. The original bill in this cause was filed by the complainants, Herman H. Loftis and wife, Betty Ann Loftis, against the defendants, The Stuyvesant Insurance Company of New York, Pioneer Finance Company, and Roy W. Evans and wife, Betty L. Evans, seeking a judgment against the Insurance Company on a fire insurance policy, an accounting with the Finance Company, and a declaration of the rights of the parties to the proceeds of the policy.

The bill alleged the complainants entered into a contract with Leeds Homes of Nashville for the construction of a house on their property in Davidson County. The contract was executed on March 30, 1960. The cash price or construction cost of the house was $1,920.00, which included $1,745.00 for construction of the house plus $175.00 for fire and title insurance premiums. Complainants made no cash payment, but executed to Leeds their note for $2,782.08 payable in seventy-two monthly installments of $38.64 each, and executed a deed of trust to secure this note. Leeds assigned the note and deed of trust to the defendant, Pioneer Finance Company.

Complainants' contract required they carry fire insurance on the property at their expense. Leeds purchased a fire policy from the defendant, The Stuyvesant Insurance Company, in the amount of $2,800.00 payable to complainants, but containing the standard mortgage clause which provided any loss should be payable to Pioneer as its interest might appear.

The house was constructed. On June 2, 1960, complainants sold the property to Evans and wife who assumed the note and deed of trust executed by complainants to Leeds and also executed their note to complainants in the sum of $1,280.00, the balance of the purchase price. The property was conveyed by an installment deed which retained a vendor's lien to secure the payment by Evans and wife the note held by Pioneer and to secure the discharge by Evans and wife of all the covenants and obligations of complainants in the deed of trust executed by complainants to Leeds and assigned to Pioneer, as well as the payment of the $1,280.00 note. The installment deed also contained a second deed of trust to secure the note of $1,280.00.

The house was completely destroyed by fire on September 28, 1960, while occupied by Evans. Complainants learned of the fire a few days later and promptly notified Pioneer which promptly notified The Stuyvesant Insurance Company.

The Insurance Company assigned the claim to an adjuster in Nashville who talked with Loftis and informed him he had information Evans had procured a fire policy on the house and this fact would reduce Stuyvesant's liability because of an apportionment clause in complainants' policy. Evans had accepted a settlement of his policy. Stuyvesant admitted its liability on a pro rata basis as being $1,211.22. Complainants refused to settle for that amount.

Complainants further charged that only four of the monthly installments had been paid on the note held by Pioneer; that Evans was in default on six installments; that he had not paid any part of the note of $1,280.00; and that he had left the state and was insolvent.

With regard to Pioneer, complainants charged that in reality the principal amount of the note was $1,920.00, and the difference of this amount and the total amount of the note of $2,782.08, or $862.08, represented and included unlawful and usurious interest and illegal finance charges; and, therefore, they were entitled to an accounting to determine the amount they lawfully owed on the note.

Complainants further alleged that Pioneer was demanding complainants pay the note; that they admitted liability on the note, but their liability was secondary to that of Evans; that Pioneer should be required, prior to suing complainants on the note and foreclosing its deed of trust on the property, to enforce its rights under the insurance policy and to do so in this litigation.

Complainants alleged that the fire policy in question was a "valued" policy and that the amount of loss was fixed at $2,800.00.

They further alleged neither they nor Pioneer had any knowledge until after the loss occurred that Evans had procured a fire policy on the property in the sum of $4,000.00 payable to Evans and wife. They averred the apportionment clause in complainants' policy had no application since the two policies did not cover the same interest and risk in favor of the same party.

The bill prayed for an accounting with Pioneer; for a decree requiring Stuyvesant to pay into the registry of the court the full amount of the policy or $2,800.00, and that the proceeds be used to first pay the note to Pioneer and the balance be applied to the $1,280.00 note of Evans to complainants; for an injunction restraining and prohibiting Pioneer from foreclosing its deed of trust or

suing complainants on the note, pending the outcome of this litigation. Complainants further sought an adjudication of the status, rights and obligations of all the parties to the cause.

A pro confesso was taken against Evans and wife.

Stuyvesant demurred to the bill but subsequently waived the demurrer by filing an answer.

In its answer the defendant, The Stuyvesant Insurance Company, averred no notice had been given it of the transfer of the house and lot from complainants to Evans prior to the fire; and, therefore, the change in title without notice constituted a violation of the policy and a material change in the risk.

The answer further alleged the house was grossly over insured and constituted fraud in law if not in fact; that complainants had violated T.C.A. sec. 56-1103 in its negotiations for the fire policy; and in the alternative its liability should be determined in accordance with the apportionment clause under which its liability would be reduced to $1,211.22. It admitted it had offered to pay this amount to complainants in settlement but insisted this was a compromise offer and not an admission of liability.

The defendant, Pioneer Finance Company, answered and admitted the $1,920.00 note which was financed by complainants included an item of $175.00 for the insurance premium and the loan closing expenses. With respect to the difference in the cash value of the house, plus the $175.00 for insurance premium and closing expenses, totalling $1,920.00, and $2,782.08, the total amount financed by complainants, was a time-price differential

and did not represent any usurious interest or other illegal charges.

It alleged the balance due on the note at the time of its answer was $2,627.52, and that it was entitled to payment of its entire debt out of the proceeds of the fire policy.

This defendant further averred it had had no knowledge of the fire policy of Evans prior to the fire.

Defendant further alleged it had demanded complainants pay the note and that it was entitled to sue complainants on the note or foreclose the deed of trust securing the same; and, therefore, complainants were not entitled to the injunctive relief sought in the bill as against it.

The facts material to the issues in this cause may be summarized as follows:

On March 30, 1960, complainants executed a contract with Leeds Homes of Nashville, Inc., for the construction of a shell house on their lot in Davidson County. The cash price for the construction of the house was $1,725.00 to which was added the sum of $175.00 to cover a fire insurance premium and a loan closing costs. The contract was executed on behalf of Leeds by the defendant, Roy Evans, as its agent.

Complainants made no cash payment, but on the same day executed a note in the principal sum of $2,782.02 to Leeds payable in seventy-two monthly installments of $38.64 each, the first installment payable on June 15, 1960, and the remaining installments payable on the same day of each succeeding month. On April 4, 1960, complainants executed a deed of trust on the house and lot in which they named Irving Leeds, a stockholder and officer of the

corporation, as trustee. Leeds endorsed the note with recourse to the defendant, Pioneer Finance Company.

On April 12, 1960, the defendant, The Stuyvesant Insurance Company, issued a fire insurance policy covering the house in the sum of $2,800.00, which contained a standard mortgage clause with loss payable to Pioneer Finance Company.

On June 2, 1960, complainants conveyed to the defendants, Roy Evans and wife, by an installment deed, a 4.9 acre tract of land which included the lot upon which the shell house was constructed. The consideration for the conveyance was the assumption by Evans and wife of the indebtedness of complainants to Leeds and the execution of a note for $1,280.00 payable on or before June 15, 1966. A vendor's lien was retained to secure the indebtedness of complainants evidenced by their note to Leeds. The deed also contained a deed of trust on the property to secure the $1,280.00 note.

Sometime shortly after June 15, 1960, the date the first installment of the note of complainants to Leeds became due, Charles Bates, who had at the time become the manager of the Nashville office of Leeds, and Irving Leeds, Trustee in the deed of trust of complainants to Leeds securing their installment note, went to see Loftis but found Evans was living in the house. A few days later Bates called Loftis and he told Bates he had sold the house to Evans and he had assumed the payment of the note.

Evans procured a fire insurance policy on the house from Granger Mutual Insurance Company on September 7, 1960, in the amount of $4,000.00 payable to Evans and wife in the event of loss.

Evans, after purchasing the house from complainants, made improvements on the house to the value of $994.98.

The house was totally destroyed by fire on September 28, 1960.

Evans settled with his insurance company.

Complainants and Pioneer were unable to settle with Stuyvesant. Stuyvesant took the position it was only liable under the apportionment clause of the policy and offered to settle on that basis. Loftis took the position the apportionment clause did not apply under the facts and demanded payment of the full amount of the policy.

Accordingly, this suit was filed.

On March 6, 1963, the matter was heard by the Chancellor on oral testimony upon a written stipulation of the parties. At this hearing, it was shown Evans had had a second house constructed on the same lot. Modern Homes Construction Company had constructed the house under a contract with Evans. The evidence is not clear when this house had been completed. The Chancellor took the matter under advisement and on June 21, 1963, he notified Counsel he was remanding the cause to the rules to hear further oral testimony of Loftis relative to the construction of the second house. This hearing was heard before the Chancellor on October 18, 1963.

On October 18, 1963, Loftis, with his Attorney, appeared before the Chancellor and testified when he learned the second house was to be erected on the property, he notified Modern Homes of the liens on the property. He notified his Attorney who also notified Modern Homes of the liens.

On October 23, 1963, the Chancellor filed a memoran-

dum opinion in which he held Loftis had not been guilty of any fraud in connection with the issuance of the fire policies. He further held since the house had been replaced neither complainants nor Pioneer had suffered a loss. It was his opinion the replacement of the house placed complainants in the same position they were prior to the fire.

Pursuant to the opinion, a decree was entered on October 25, 1963, dismissing complainants' suit.

Complainants have appealed to this Court and assigned errors.

Before we consider the assignments, it is necessary we dispose of a preliminary matter. After the appeal was perfected to this Court; defendant, The Stuyvesant Insurance Company, filed a motion for leave to file an amended and supplemental answer to the original bill in this cause in which it is urged since Evans replaced the house on the property neither complainants nor Pioneer had suffered a loss and were not entitled to a decree against this defendant on the insurance policy.

Complainants oppose this motion and insist this Court has appellate jurisdiction only, and has no authority to grant the motion.

The record shows Stuyvesant learned the house had been replaced at the hearing on March 6, 1963. As stated, in June the Chancellor notified Counsel he would hear further testimony of Loftis as to the circumstances surrounding the erection of the second house. As pointed out above, this hearing was had on October 18, 1963. Five days later the Chancellor filed his opinion which was implemented by his final decree two days thereafter. Defendant did not, during this time, apply to the Chan-

cellor for leave to amend its answer to set up this defense. But does seek to amend it here.

We agree with Counsel for complainants we must deny the motion. The jurisdiction of this Court is appellate only. T.C.A. sec. 16-408. This Court can only consider matters brought to the attention of the Chancellor, and acted upon or pretermitted by him. Clement v. Nichols, 186 Tenn. 235, 209 S.W.(2d) 23.

We now consider the errors assigned.

Complainants next complain of the action of the Chancellor in holding "with the house being replaced this left Mr. Loftis and Pioneer Finance in this original positions as to their security."

It is argued this finding is erroneous both in law and fact in that all the evidence is to the effect the second house is inferior and less valuable than the original and there is no insurance on the house in favor of complainants or Pioneer. That, as a matter of law, the rights of complainants and Pioneer to the proceeds of the policy were fixed at the time of the fire.

The only proof as to the value of the second house is the testimony of Loftis who stated its worth was from $2,000.00 to $3,000.00. The cash price for this house was $1,599.00. The cash price for the original house was $1,745.00. Evans made valuable improvements on it to the extent of almost $1,000.00. It was insured for $2,800.00 with loss payable to Pioneer. This policy was a valued policy. There is no proof of any insurance on the second house.

Thus, we agree complainants and Pioneer were not left "in their original positions as to their security" by

the replacement of the house by Evans. We think the Chancellor was in error in finding to the contrary.

██ ██ The rights of complainants and Pioneer to the entire face amount of the policy under our valued policy law were fixed as of the date of the loss. Pioneer's rights under the mortgage clause was not dependent upon the sufficiency or insufficiency of the security after the fire. Saverese v. Ohio Farmers' Insurance Company, 260 N.Y. 45, 182 N.E. 665, 91 A.L.R. 1341; 36 Am.Jur., Mortgages, Section 340, page 860; 46 C.J.S. Insurance sec. 1147, page 29.

Accordingly, we sustain this assignment of error.

It is next insisted by complainants Stuyvesant waived all defenses to this suit of which it had knowledge, prior to the filing of the bill, other than it was only liable under the apportionment clause of the policy.

It is argued in support of this assignment that Stuyvesant at no time during the negotiations with Loftis and the adjuster for the defendant denied liability under the policy; but instead insisted its liability was limited by the apportionment clause of the policy and agreed to pay the sum of $1,211.22 as its pro rata part of the total loss.

As stated, Stuyvesant insists the offer was made as a compromise settlement and did not amount to an admission of liability.

The witness, G. S. Gaillord, Jr., and insurance adjuster, testified he was employed to investigate the claim of complainants and Pioneer. He made a full and thorough investigation of the matter and reported his findings, which were substantially as the evidence we have heretofore summarized, to Stuyvesant. In turn, Stuyvesant

advised Gaillord it felt it was liable to claimants under the pro rata liability or apportionment clause of the policy and authorized him to settle on that basis.

There is no proof that Stuyvesant ever, prior to the filing of the original bill, insisted the policy had been forfeited by any act of complainants or Pioneer. On the contrary, defendant treated the contract in force and insisted the apportionment clause therein governed the amount of their liability.

██ ██ It is our opinion Stuyvesant admitted liability and the only controversy between the defendant and claimants, prior to the filing of the bill, was whether the pro rata liability clause was enforceable under the facts.

"Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he is estopped, after litigation is begun, from changing his ground, and putting his conduct to another and different consideration." Railway Company v. McCarthy, 96 U.S. 258, 24 L.Ed. 693; Ault v. Dustin, 100 Tenn. 366, 45 S. W. 981; Snyder v. Supreme Rules of the Fraternal Mystic Circle, 122 Tenn. 248, 122 S.W. 891, 45 L.R.A., N.S., 209; 29A Am.Jur. Insurance, Section 1098, page 262; 45 C.J.S. Insurance sec. 707, page 677.

Since we must sustain this assignment, the only question which remains for our determination as between claimants, complainants and Pioneer, and defendant, Stuyvesant, is whether the apportionment clause of the policy is enforceable under the facts.

The clause provides: "This Company shall not be liable for a greater portion of any loss than the amount hereby insured shall bear to the whole insurance covering

the property against the peril involved, whether collectible or not.''

The general rule is that such an apportionment clause cannot be enforced unless the policies cover the same interest, the same risk and in favor of the same party. Couch on Insurance, Vol. 7, Section 1848, page 6166; 45 C.J.S. Insurance, sec. 922(3), page 1033; 29A Am.Jur., Insurance, Section 1708, page 788.

In the case of Smith v. Northern Insurance Company, 232 App.Div. 354, 250 N.Y.S. 30, in which a similar provision in an insurance policy was under consideration, it was said:

''The real question in the case seems to resolve itself into this: Does the phrase, 'the whole insurance covering the property,' relate only to insurance in favor of the same assured, on the same interest? There may be 'as many several insurances upon the same property as there are separate interests.' DeWitt v. Agricultural Insurance Company, 157 N.Y. 353, 51 N.E. 977, 978. An insurable interest is vested in the vendor, the vendee, the mortgagor or the mortgagee and others having a separate interest, and each may insure his own distinct insurable interest. The thing insured is not the property described, but the interest or estate of the insured therein.''

In 29 Am.Jur., Insurance, Section 1708, page 788, it says:

''A provision in a policy that in case of any other insurance on the property insured, made prior or subsequent to the policy, the insured shall be entitled to recover no greater proportion of the loss than the sum insured bears to the whole amount so insured therein,

applies only to cases where the insurance covers the same interests, and can have no application to insurance obtained upon another distinct insurable interest in the property.''

We think it is obvious from the facts the two policies did not insure the same interest in favor of the same party.

Moreover, the policy in this cause was issued to complainants as owners of the property insured, and contains an attached standard mortgage clause for the benefit of the mortgagee, Pioneer Finance Company, and contains provisions identical to those prescribed for such contracts by our statute, T.C.A. sec. 56-1140, which provides in part the policy shall not be invalidated by any act or neglect of the mortgagor.

It is settled law in this state under a mortgage clause of a fire policy, the contract of insurance with a mortgagee is one separate and distinct from that with the mortgagor. Laurenzi v. Atlas Insurance Company, 131 Tenn. 644, 176 S.W. 1022; Phoenix Mutual Life Insurance Company v. Greene County Farmers' Mutual Life Insurance Company, 165 Tenn. 337, 54 S.W.(2d) 971.

In the case of Laurenzi v. Atlas Insurance Company, supra, it was held where the mortgagor purchased other and additional insurance to that of a policy on the mortgaged property to which a mortgage clause had been attached in favor of the mortgagee did not come within a pro rata liability clause of the policy to which the mortgage rider was attached. Specifically, the court said:

''The contract evidenced by the rider is a separate and distinct one with the mortgagee, designed for his protection, and in operation from the date of its execu-

tion; that, in so far as the policy or contract with the mortgagor is in harmony therewith, it is to be referred to, to supplement and complete the terms of the mortgagee's contract, and, in so far as the policy is out of harmony with the rider, such adverse provisions are to be disregarded; and, further, that under such a contract the security of the mortgagee cannot be invalidated, either in whole or in part, by any act or neglect of the mortgagor, either prior or subsequent to the execution of such contract with the mortgagee. Therefore the fact that the mortgagor in the present case had, without the knowledge of the mortgagee, procured another policy on his own interest in the Globe & Rutgers Fire Insurance Company, cannot in any degree invalidate the mortgagee's insurance. It follows also that, the provisions of the contract with the mortgagor concerning contribution with other insurers being out of harmony with the rider, the latter must prevail, and the provisions referred to can have no effect upon the security of the mortgagees created by the contract with them.''

This being the law, we do not think it can be successfully argued the policy of Evans comes within the operation of the apportionment clause of the policy of complainants containing the mortgage clause in favor of Pioneer. If it is to be disregarded as to additional insurance purchased by the mortgagor without the consent or knowledge of the mortgagee, certainly it is to be disregarded as to a policy issued upon the interest of a third party for his benefit in which the mortgagee has no interest.

For the foregoing reasons, we are of the opinion the apportionment clause in complainants' policy does

not apply under the facts of the case and we sustain the assignment.

Finally, it is insisted by complainants the Chancellor was in error in failing to hold they were entitled to an accounting with Pioneer as well as an injunction restraining and prohibiting Pioneer from bringing a suit on the note and foreclosing the deed of trust pending the outcome of the litigation.

We think, in view of the fact we have sustained the other assignments, and it will be necessary to remand the case for the enforcement of the decree which will be entered in this Court, this relief should be granted. There is no proof in the record of what the difference between the $1,920.00 shown in the contract and the total amount of the note consists. From the record, we are unable to determine whether the note is usurious. We think all the issues should be resolved in this case to the end this litigation may be brought to a close as soon as possible with the least expense to the litigants. By ordering an accounting, Pioneer will not be prejudiced since should the accounting show usury or any illegal charges, Pioneer will have recourse against Leeds Homes.

We conclude the evidence preponderates against the finding of the Chancellor and under authority of T.C.A. sec. 27-301 and T.C.A. sec. 27-303, it is our duty to enter such decree in this Court as the law and evidence warrant.

The decree of the Chancellor is reversed. A decree will be entered in this Court directing the defendant, The Stuyvesant Insurance Company, to pay into the registry of the Chancery Court of Davidson County the sum of

$2,800.00, the face amount of the policy. An accounting will be ordered between complainants and Pioneer Finance Company as to whether the note held by Pioneer is usurious; an injunction will issue restraining Pioneer from filing suit on the note and foreclosing the deed of trust securing same, unless Pioneer will agree to forego filing suit on the note and foreclosing the deed of trust pending the outcome of this litigation; the indebtedness of complainants to Pioneer as finally determined will be first paid out of the proceeds of the insurance policy and the balance, if any, to complainants. Defendant, The Stuyvesant Insurance Company, will pay the costs.

The cause will be remanded for the enforcement of the decree.

Shriver and Humphreys, JJ., concur.

HUMPHREYS, J., (concurring). While I concur in the conclusion reached by the majority, I have something to say on the motion to file an amended and supplemental answer to the original bill in this Court. And that is, although this Court has only appellate jurisdiction (T.C.A. sec. 16-408) and so cannot permit the filing of an amended and supplemental answer to an original bill here, we can achieve the same result in proper cases by remand under T.C.A. sec. 27-329.

And, except for the fact the construction of the second house cannot inure to the benefit of Stuyvesant to relieve it of its fixed contract obligation, a remand for an amendment of the nature sought might be in order.

PER CURIAM.

On Petitions to Rehear.

We have been presented with a petition to rehear by

both complainants, Loftis and wife, and the defendant, The Stuyvesant Insurance Company of New York.

Complainants insist we should have allowed interest on the judgment of $2800.00 rendered in this Court against The Stuyvesant Insurance Company of New York in favor of the complainants from and after December 7, 1960.

We think we must grant the petition. The writer of the original opinion inadvertently overlooked this matter.

It is shown in the record the house was totally destroyed by fire on September 28, 1960. Defendant was notified within a few days of the fire. The defendant placed the claim with the General Adjustment Bureau for investigation and adjustment on October 7, 1960. G. S. Gaillord, Jr., an insurance adjuster, undertook to adjust the claim with complainants. As stated in the original opinion, his efforts failed and this suit resulted.

The policy provides the amount of loss shall be payable sixty days after proof of loss is received by the Company and the loss is ascertained by agreement between the insured and the Company or by filing an award with the Company.

Defendant did not insist upon the filing of proofs of loss. All the proof in the record shows the house was totally destroyed by fire and that the policy was a valued policy under our statute.

Wherefore, we think the amount of the policy was payable sixty days after claim was assigned to the Adjustment Bureau for investigation and settlement as insisted by complainant.

T.C.A. sec. 47-1607 provides:

"All bonds, notes, bills of exchange, and liquidated and settled accounts, signed by the debtor, shall bear interest from the time they become due, unless it is expressed that interest is not to accrue until a specific time therein mentioned.".

"Under this section courts are compelled to allow interest in all cases which come within its terms." Phoenix Ins. Co. v. Jordan, et al., 28 Tenn.App. 11, 184 S.W.(2d) 721; Nickey Bros. v. Lonsdal Mfg. Co., 149 Tenn. 391, 258 S.W. 776.

In the case of Peoples Bank and Trust Company v. United States Fidelity and Guaranty Company, 156 Tenn. 517, 3 S.W.(2d) 163, our Supreme Court said:

"A policy of life insurance falls within this section and bears interest from the time it becomes due and payable. The allowance of interest is imperative. Knights of Pythias v. Allen, 104 Tenn. 623, 58 S.W. 241. Fire insurance policies; accident insurance policies, and other insurance contracts proper would come under this section of the Code."

T.C.A. sec. 47-1608 provides:

"The time from which interest may be computed shall be the day when the debt is payable, unless another day is fixed by the contract itself."

 Accordingly, interest will be allowed on the judgment of $2800.00 against the defendant from December 7, 1960, to the date hereof.

Defendant in its petition to rehear again insists the Chancellor was not in error in holding the replacement

of the house exonerated the defendant from any liability under the insurance policy. We considered this matter in our original opinion and gave our reasons for holding otherwise.

Likewise, we considered all other matters complained of in defendant's petition to rehear.

"A petition for a rehearing which points out no material matter of law or fact overlooked, but merely reargues matters already considered and determined, should be denied." Myrick v. Johnson, 25 Tenn.App. 483, 160 S.W.(2d) 185.

"The office of a petition to rehear is to call attention of the court to matters overlooked, not to those things which the counsel supposes were improperly decided after full consideration." Louisville & N. Railroad Co. v. United States Fidelity & Guaranty Company, 125 Tenn. 658, 148 S.W. 671.

Defendant's petition is denied at its cost.

Petition to Rehear of Complainants granted.

Petition to Rehear of Defendant is denied.