ROBERT B. CULTRA, Appellee-Complainant, v.
DOROTHY DOUGLAS, Appellant-Defendant.
—444 S.W.2d 575.

Western Section. July 7, 1969.

Certiorari Denied by Supreme Court September 2, 1969.

Sam C. Nailling, Union City, for appellant.

Randall P. Burcham, Miles & Miles, C. W. Miles, III, W. M. Miles, Union City, for appellee.

MATHERNE, J. This is a suit in Chancery seeking specific performance of a written contract to sell real property. The Chancellor held for the complainant below and decreed specific performance. The defendant below, Dorothy Douglas, has perfected her appeal to this Court.

The defendant on appeal lists in this Court ten (10) Assignments of Error wherein she presents one overriding and determinative issue, namely—under the facts and circumstances of this case, is the complainant entitled to have a court of equity decree specific performance of the contract?

It is important to here note how this contract came into existence. The complainant, Robert B. Cultra, was in the process of buying up some real estate in Obion County, Tennessee in the vicinity of where a new interstate highway was to be constructed. Complainant contacted Mr. R. P. Burcham, attorney of Union City, Tennessee, and drove him out to the property in question to find out if Mr. Burcham knew who owned it. Mr. Burcham on that occasion told complainant that the defendant, Dorothy Douglas, owned the property, and that he represented the defendant. Whereupon, a fair interpretation of the record shows that complainant, Cultra, employed Mr. Burcham to obtain the property for him from the defendant for $10,000 if possible and to pay $12,000 if necessary. Complainant, Cultra, testified "I just simply hired an attorney to secure a legal option to a piece of property." Thereafter, Mr. Burcham contacted the defendant to come by his office the first time she was in Union City, there was something he wanted to talk to her about.

The defendant, on July 15, 1967, went to Mr. Burcham's office and discussed with him some matters pertaining to business he was handling as her attorney. On this date Mr. Burcham told the defendant that a party wanted to buy her property, but he could not divulge the name of the purchaser. He told the defendant he was authorized to offer her $10,000 for the property, the defendant replied that she would not sell for that amount. Mr. Bur-

cham then stated to the defendant that he was authorized to offer her $12,000, whereupon, defendant stated in substance that she thought that was nearer the right price, and according to Mr. Burcham she said, "I'll take it, what do you think of that?" Mr. Burcham stated that he replied "I think you did right. I think that's fair." Thereupon, Mr. Burcham presented to the defendant the contract in question, which Mr. Burcham had already drawn up with the date, consideration for the property and the down payment left in blank. The blanks were filled in and the contract was executed by the defendant and Mr. Burcham, wherein the defendant agreed to sell and "R. P. Burcham, Attorney at Law," agreed to buy the property in question for the sum of $12,000 "of which $10.00 dollars has been paid upon the execution and delivery of this contract * * *."

Mr. Burcham testified that he advised the defendant that the contract would have to be entered into between him and the defendant due to the fact that he could not divulge the name of the purchaser. The defendant testified that she thought she was signing an option to sell and that she understood from Mr. Burcham that she did not have to sell, but that under the instrument she could sell if she wanted to; and that she would not have signed such a contract with anyone under any circumstances other than Mr. Burcham as she placed absolute confidence in him.

Late that summer Mr. Burcham told the defendant it was time for her to sign the deed to the property. The defendant told him she did not intend to sell and did not understand she had to sell. Thereupon, Mr. Burcham took the complainant, Robert B. Cultra, to the home of the defendant for the two of them to talk. This was the first

knowledge the defendant had that Mr. Cultra was the other person involved. The defendant told both Mr. Cultra and Mr. Burcham on that occasion that she would not sell the land and that she was not obligated to do so. Mr. Cultra went to the defendant's home on another occasion and some conversation was had as to a possible settlement of the matter, and he was again told by defendant that she would not sell.

Thereafter on October 30, 1967, Mr. Burcham assigned the contract in question by written instrument to the complainant for the stated consideration of $1.00. On November 13, 1967 the complainant, Robert B. Cultra, filed this suit against the defendant for specific performance of the contract to sell. The cause was heard on oral testimony before the Chancellor without a jury, and the Chancellor held for the complainant. The Finding of the Chancellor is as follows:

"Gentlemen:

I think that there has been a little mistake about this thing. This is not an option that you've got there. Both parties are bound. In other words, Mrs. Douglas was bound to sell to Mr. Burcham, and Mr. Burcham was bound, under this contract, as I see it, to purchase it. In other words, neither one of them had an option of backing out, according to the terms of the contract. It didn't take any consideration, in other words, the promise of each in exchange for the promise of the other one was sufficient consideration, as I see it, for the execution of the contract. I will admit to you that I am somewhat disturbed about the question of champerty that's come up, but I can't believe that there is a defense to this case. Now, I will grant you that Mr. Nailling is perfectly right, it can be raised at any time,

and if it is justified, or if it is a defense in this particular case, and under these particular facts, why a higher Court will have to hold that. This Court has authority, where one party obtains an advantage by a breach of confidence, or a practice of fraud, or misleads or deceives another party, for relief against it, but when the contract is binding on the parties, it's binding on the Court, as I see it, and for that reason, I will have to hold that they are entitled to specific performance.''

■■ On this appeal the parties are entitled to a review of the law and the facts de novo upon the record from the Chancery Court, accompanied by a presumption of the correctness of the decree below, unless the preponderance of the evidence is otherwise. T.C.A. sec. 27-303. If the evidence preponderates against the finding of the Chancellor it is the duty of the Court of Appeals to enter such decree as the law and the evidence warrant. Loftis v. Stuyvesant Ins. Co. (1964) 54 Tenn. App. 371, 390 S.W.2d 722.

■ A litigant is not entitled to specific performance as a matter of right. Leathers v. Deloach (1918) 140 Tenn. 259, 204 S.W. 633. The right to specific performance in any particular case is governed by the ordinary principles of equity; and the granting or refusing of a decree of specific performance lies within the sound discretion of the Chancellor under the facts appearing in the particular case. New River Lumber Co. v. Tenn. Railroad Co. (1916) 13 Tenn. 661, 191 S.W. 334.

In T. J. Moss Tie Co. v. Hill (1951) 191 Tenn. 582, 235 S.W.2d 587, the Court speaking through Mr. Justice, now Chief Justice Burnett, in considering the principles to be applied to a suit seeking specific performance, quoted

with approval from 49 Am. Jur. Specific Performance, Sec. 58, pp. 72, 73, as follows:

"Equity, in decreeing specific performance, requires not only that the contract be just and equitable in its provisions, but that the consequences of specific performance likewise be equitable and just. One of the general rules formulated and followed is that this equitable relief will not be granted if, under the circumstances of the case, the result of the specific enforcement of the contract would be harsh, inequitable, oppressive, or result in an unconscionable advantage to the plaintiff, even though the complainant has no intention of taking an unfair advantage, and even though the contract may be valid and enforceable at law. In every case where a specific performance is asked, the question must be whether the exercise of the power of the court is demanded to subserve the ends of justice, and unless the court is satisfied that it is right in every respect, it will refuse to interfere."

To determine whether the facts of this case present a contract which is subject to specific performance, we are first confronted with the confidential relationship of attorney and client which existed between Mr. Burcham and the defendant, Dorothy Douglas, and whether this relationship was breached to the detriment of the defendant.

In the case of Turner v. Leathers (1950) 191 Tenn. 292, 232 S.W.2d 269, our Supreme Court stated the rule of confidential relationship as follows:

" 'Whenever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence

is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no confidential relation had existed.' '' Pomeroy's Equity Jurisprudence, 5th Ed. Vol. 3, sec. 956, p. 792.

This principle pervades the whole reach of confidential and fiduciary relations; trustee and cestui, Knox County v. Fourth & First Nat. Bank, 181 Tenn. 569, 182 S.W.2d 980, principal and agent, McNeill v. Dodson-Bainbridge Realty Co., 184 Tenn. 99, 195 S.W.2d 626, attorney and client, parent and child, guardian and ward, physician and patient, nurse and invalid, confidential friend and advisor, and every relation which gives one person "dominion or influence" over another. Bayliss v. Williams, 46 Tenn. 440; Miller v. Proctor, 24 Tenn.App. 439, 145 S.W.2d 807, 808; Roberts v. Chase, 25 Tenn.App. 636, 166 S.W.2d 641.

In the present case the record clearly reveals that Mr. Burcham had represented the defendant, Dorothy Douglas, as her attorney for a period of about eight years prior to the contract in question. He had represented her in matters involving divorce proceedings, child support petitions, sale of real estate, an automobile accident, employment, financing and every matter this defendant had which required legal advice and counseling. At the time the contract was entered into between defendant and Mr. Burcham, he was representing her on legal matters, and consulted with her that day in regard thereto.

The record reveals the defendant was a widow, 37 years of age, with three dependent children. The defend-

ant had an eleventh grade education and worked as a waitress in a cafe for a living. The property involved constituted the home of the defendant.

We find as a fact that in addition to the usual attorney-client relationship that the defendant placed complete confidence in Mr. Burcham and depended upon him for advice and counsel. This defendant took the attitude of so many clients toward their attorney, namely, she would not enter into any transaction, obligation or understanding without first advising with Mr. Burcham, and once having so advised she would follow his advice to the letter, without question and with no thought of seeking on her own volition any other, further or additional advice. The record clearly indicates that Mr. Burcham understood this feeling of confidence which the defendant placed in him.

The relationship of attorney and client is an extremely delicate and fiduciary one so far as the duty of the attorney toward his client is concerned, and the courts jealously hold the attorney to the utmost good faith in the discharge of his duties. Cooper & Keys v. Bell (1913) 127 Tenn. 142, 153, S.W. 844; Coleman v. Moody (1963) 52 Tenn.App. 138, 372 S.W.2d 306.

Mr. Burcham insists that he revealed to the defendant, his client, that he was entering into this contract with defendant for the purpose of letting another person buy the land. Mr. Burcham and the complainant insist therefore that the confidential relationship was not breached and that the contract is subject to an order of specific performance. Under the facts of the record we are unable to agree.

It is true that Mr. Burcham told the defendant that a third party was involved, however, we do not find in the record that Mr. Burcham made it clear to the defendant that he, Burcham, had been employed by the third party to purchase at a stated figure the property owned by the defendant. When the defendant agreed to take the second offer of $12,000 made by the complainant, Cultra, through his attorney, Mr. Burcham, and she then asked her attorney, the same Mr. Burcham, if he thought she did right, this Court is unable to say that Mr. Burcham's response in the affirmative was an opinion that his client, Dorothy Douglas, the defendant, was getting what the property was worth, or whether said response was activated by the fact that $12,000 was the top dollar his client, complainant, Cultra, had authorized him to pay.

We are therefore faced with the rule which prohibits an attorney from representing conflicting interests in any particular matter. The rule is well stated in an opinion by Presiding Judge Walker of the Court of Criminal Appeals, in the case of Autry v. State (1967) 430 S.W.2d 808 and 809, as follows:

"It has long been firmly established, both in the Canons of Professional Ethics and by judicial opinions, that attorneys cannot represent conflicting interests or undertake to discharge inconsistent duties. When an attorney has once been engaged and received the confidences of his client, he cannot enter the services of those whose interests are adverse to that of his client or former client. The rule is a rigid one, and it is well that it is so."

Dealings between attorney and client are taken out of the general rule governing dealings between parties to

an ordinary business or mercantile transaction and are subjected to a much more strict interpretation as set out in 7 C.J.S. Attorney and Client sec. 127, at pp. 964-965, as follows:

"Rather, all such transactions or dealings are regarded with suspicion and disfavor, are discouraged by the policy of the law, and will be closely scrutinized by the courts which will lean against the attorney; and if it appears that the transaction is unfair that the client has been overreached or unduly influenced, it may be avoided at his election, either in courts of law, or in courts of equity on the principles that govern the conduct and dealings of trustees or fiduciaries generally."

We do not hold that Mr. Burcham intended to take any unfair advantage of the defendant, Dorothy Douglas. We do not know whether he did so intend or not, and whether he did so intend or not is immaterial under the facts of the case. We do find as a fact that Mr. Burcham was representing conflicting interests; that the extent of his interest was not fully revealed to the defendant; that the defendant was his client of many years and had implicit confidence in him; that Mr. Burcham was aware of this unquestioned confidence the defendant had in him; and that as a result of the foregoing facts, the defendant, Dorothy Douglas, not being fully advised and independently counseled, entered into the contract mistakenly, she misunderstood its full implications, and she did enter into an agreement which she did not understand and would not have made had she not been in the situation as herein outlined.

We further hold as a fact that the complainant, Robert B. Cultra, had full knowledge of the relationship of

attorney and client as existed between Mr. Burcham and the defendant before he employed Mr. Burcham as his attorney to obtain from the defendant an option for him, Cultra, to purchase the land; and that the complainant had full knowledge that the defendant denied she was obligated to sell the land under the contract and that she refused to so sell before he, Cultra, obtained the assignment of the contract from Mr. Burcham. Whatever the consideration to be paid by the complainant to Mr. Burcham for the assignment of the contract, whether sufficient or not, does not remove the fact that complainant had full knowledge of the plight of the defendant throughout the entire transaction. "He who seeks equity must do equity."

We, therefore, hold that the Chancellor erred in ordering specific enforcement of the contract. To order specific performance under the facts of this case would be harsh and inequitable to the defendant, and would result in an unconscionable advantage to the complainant.

The Assignments of Error need not be individually disposed of by the Court in that under our decision on the overriding issue the decree below must be and is overruled, and the case is dismissed at the cost of the complainant, Robert B. Cultra.

Reversed and dismissed.

Carney, and Taylor, JJ., concur.

CARNEY, Judge (concurring).

I concur in the foregoing opinion that the decree for specific performance should be reversed but I am of the opinion that the defendant, Mrs. Douglas, did understand that she was signing a contract for the sale of her prop-

erty at $12,000 and was not misled into believing that she was only signing a contract which would give her the option to sell at $12,000.

It was argued by solicitors for complainant that Mrs. Douglas knew or should have known that the new highway was coming by her property and would be located on a cloverleaf intersection because the stakes placed by the highway engineers were in her yard. Under Tennessee law an agent may represent two principals in a transaction involving adverse interests but such agent must disclose to each principal such material facts as will enable the principal to form a reasonably correct opinion and conclusion as to the principal's best interest. Bell v. Strauch, 40 Tenn.App. 384, 292 S.W.2d 59; McNeill v. Dobson-Bainbridge Realty Co., 184 Tenn. 99, 195 S.W. 2d 626. The good faith of the agent or attorney does not determine the legality of the transaction.

I think Mrs. Douglas was entitled to revoke the contract before execution of the deed since Mr. Burcham did not explain to her clearly at the time he contracted with her that he was representing Mr. Cultra as a lawyer and was not representing and advising her as her lawyer. Mrs. Douglas received no down payment at the time she signed the contract. Under these circumstances Mr. Burcham would not be entitled to a degree of specific performance and, of course, Mr. Cultra, as his assignee or unnamed principal, would not have any rights to specific performance greater than Mr. Burcham would have. Kennedy v. Woolfolk, 4 Tenn. 195, 3 Haywood, 195.